M. G. HOWE, RECEIVER, v. W. O. HARDING.

No. 2789.

1.  **Railway Receivership.**—It is not true that a receiver empowered to take possession of, control, and operate a railway, is in no sense the representative of the corporation that owns it; nor is it true that a court appointing a receiver is under no obligation to continue in force and in some cases to cause to be fulfilled the personal contracts of the company, though they may have been improvidently made.

2.  **Same—Obligation of Contracts.**—The continuance of the obligation of contracts of a railway corporation is not dependent on the will or act of a court, nor can a court in any proper case refuse to execute them.

3.  **Same—Case in Judgment.**—The railway company constructing its road through a tract of land contracted with its owner for the right of way, and for water supply to be furnished from an elevated spring through pipes to a tank at the side of the track, the water service to be paid for. *Held,* that as the compensation for the latter embraced the consideration for the right of way, the obligation to pay must be considered as binding for so long as the right of way is used under the contract.

4.  **Suits Against Receiver.**—A creditor holding the specific right to be paid out of the earnings of a railway, or having a lien on the property in the hands of a receiver in control of such road, may proceed by suit against the receiver.

5.  **Same—Case in Judgment.**—Under the contract involved in this case, inasmuch as the account accrued under the provisions therein for the payment for the right of way and for water supply in running trains, the creditor would be entitled to payment from the earnings of the road as current expenses, if not from the corpus of the property, even if no lien existed to secure it.

6.  **Same.**—The railway company or receiver, repudiating the contract for the payment for the monthly water service, would be liable for the purchase money for the right of way, as well as for compensation for work and material furnished to convey the water to the tank.

7.  **Vendor's Lien for Right of Way.**—It seems that a lien equivalent to the vendor's lien exists to secure the purchase money for the right of way when not paid.

8.  **Same—Statutory Remedy.**—By General Laws of 1887, page 121, "all judgments, claims, or causes of action, when determined, existing against any corporation at the time of the appointment of a receiver, shall be paid out of the earnings of such corporation while in the hands of the receiver, to the exclusion of mortgage actions; and the same shall be a lien on such earnings." This includes such claims as the one here in controversy.

9.  **Judgment Against Receiver.**—The judgment below was that plaintiff "recover of M. G. Howe, as receiver of the Houston East & West Texas Railway Company, the sum of $662. * * * It is further ordered, adjudged, and decreed by the court, that this judgment be certified to the District Court of Harris County, wherein the receivership is pending, and that M. G. Howe, receiver, be required to pay this judgment in the course of law out of the earnings of the corporation while in the hands of the receiver, and as required to be paid by statute. * * * It is further ordered, adjudged, and decreed by the court, that in case the said receiver fails, neglects, and

refuses to pay this judgment within a reasonable time, then that the fact of his refusal to pay the same be certified to this court for further action in this behalf, for such other orders as may then be deemed necessary. It is further ordered that no judgment be taken against the railway company as such, the receiver of said company as such being the only party against whom a judgment can be rendered in this behalf to enforce the obligations existing as in this case." *Held,* these directions as to the manner of enforcing the judgment do not operate to the prejudice of other creditors.

APPEAL from Polk. Tried below before Hon. L. B. Hightower. The head notes, with opinion, contain a statement.

*Goldthwaite & Ewing,* for appellant. — 1. A receiver is not the representative of, nor in privity with, the company whose property he holds, but is the mere hand of the court appointing him; and the court can not be bound to the continuance and fulfillment of the company's personal contracts, improvident and disastrous though they be, without destroying the court's independence and success in the management of the trust assumed, and creating a privity that the settled rules of law deny. Express Co. v. Railway, 9 Otto, 191; Wait's Insolv. Corp., sec. 170; High on Rec., sec. 186; Beach on Rec., sec. 725; Ellis v. Railway, 107 Mass., 28; Lehigh Co. v. Railway, 3 Cent. Rep., 95.

2. A railroad receiver, by virtue of his general powers, can not make a contract either perpetual or extending as a charge on the trust beyond his stewardship, and a contract he can not make in the first instance is beyond the pale of his ratification, nor is ratification ever possible in the absence of adoption with knowledge of all the facts.

3. Stripped of the immaterial, the transaction was simply an absolute grant by J. to R., with the consideration a personal obligation from R. to H., just as though the consideration had been a specified sum of money or other thing of value. This personal obligation was deemed and accepted, subject to future contingencies rendering it valueless, as a *quid pro quo* for the grant; it was not imposed on the grant either as a limitation or condition, was not even a covenant running with the land, and hence the mere use by the receiver in operating the road of the right of way is wholly unimportant on the issue presented. Railway v. Smith, 72 Texas, 122.

4. No court except the one appointing him can control the receiver's actions as to the fund committed to his custody. He can not be required "to serve two masters." The court below in requiring the receiver to pay the judgment out of earnings within a reasonable time acted without authority. Neither the Act of 1887, which clearly refers to the appointing court, nor the Act of 1889, which merely allows execution in certain contingencies, furnishes any warrant for the rule thus laid on the receiver. Besides, the latter act was not in existence when the judgment was rendered. Sayles' Stats., art. 1468; Acts of 1889, p. 55; Wait's Insolv. Corp., sec. 205.

*James E. Hill,* for appellee. —1. The Houston East & West Texas Railroad Company having entered into a contract with appellee, whereby the company obtained a right of way through the W. O. Harding lands, owned by appellee, and lands in his possession, claimed by him and under his control, and therefor the company agreeing to erect a water tank on said right of way, to be supplied by appellee's elevated spring, agreeing to pay appellee per month, as settled by the parties, as a consideration for the right of way privileges granted, is such a contract that the appellant receiver of said railroad company can not violate, repudiate, or annul, so long as he undisturbed continues to use the right of way obtained by the contract; and the receiver as such is responsible in damages for a breach of the contract occasioned by himself.   Rev. Stats., arts. 1468, 1470e; High on Rec., 394c, 394b.

2.   Appellant is estopped to deny the contract made with the railroad company while he enjoys the benefits of it.   Warner v. Munsheimer, 2 Ct. App. C. C., sec. 395; Hunt v. Turner, 9 Texas, 389, 390; 3 Wait's Act. and Def., p. 202; Railway v. Mayor, 1 Hilt., 587.

STAYTON, CHIEF JUSTICE.—Appellee alleges that he made a contract with the Houston East & West Texas Railway Company in 1880, whereby that company, in consideration of the grant of right of way across a tract of land owned by him and other lands of which he had possession, control, and management, agreed to erect and maintain a water tank on his land, to be supplied with water from an elevated spring thereon, which was to be used by the company, for which he was to be paid as much per month as the company should pay to any other person on its line for like privilege or service.

He alleges that the tank was erected, pipe furnished by the company at his expense, which was by himself laid from the spring to the tank, a distance of about one thousand feet, and that he thus furnished the company with water necessary for its uses until July 11, 1885, at which time the railway went into the hands of appellant as receiver, appointed by the District Court for Harris County, who, since that time, has had exclusive control of all the property of the company, and has operated the road over the way granted as the consideration for the company's promise.

He further alleges that appellant permitted the tank to remain and used water from the spring until July, 1887, when the tank was removed, and appellant ceased to use water and refused from that time until this action was brought to pay therefor.

It was alleged that other persons on the line for similar water service received $50 per month.

It appears from the evidence that two instruments were executed at the time the contract was made, both of which went into the possession of the railway company.

Notice was given to produce them, but only one was produced, and the contents of the other were proved by oral testimony.

The contract produced was one signed by and purporting to be made by Nancy S. James, and in the usual form conveyed the right of way over the land, and as to the consideration for the grant of way contained the following language: "And as a further consideration for said right of way the company agrees to erect a tank on said premises, provided there be sufficient water, and contract with the above party or her authorized agent to keep the same supplied."

The other paper was proved to evidence a contract in regard to tank, furnishing water, and compensation therefor as alleged, and thereby the compensation was made payable to appellee.

It was shown that in 1866 title to the entire tract of land over which right of way was granted was in Nancy S. James, but appellee was permitted, without objection, to state that she heard the contracts read, and that it was made for his benefit with her consent, the inference being that the promise was made directly to him, and that he had lived on the land and been in actual possession since 1854, claiming it; that his homestead of two hundred acres was nearly one thousand varas square, over which the road ran more than one mile circuitously, and that on this was the elevated spring and water tank.

Miss James was shown to be a near relative, who had been a member of appellee's family for more than fifty years, and the inference from the evidence is that while title to a part of the land, or it may be the whole, stood in her name, that the beneficial interest was in appellee.

There was a judgment in favor of appellee for water service under the contract from April 1, 1887, to December 20, 1888, amounting to six hundred and sixty-two dollars.

There is no complaint that the judgment is too large, but it is contended that under the facts no judgment whatever could be rendered against the receiver for the value of water service, as provided by the contract, after he ceased to use the water from the spring.

The assignments presenting this question are as follows:

"The court erred in its main charge to the jury wherein it stated, in effect, that if the defendant railway company made with plaintiff the contract stated in the petition before the appointment of the receiver of the former, then this defendant, as receiver, was liable to the plaintiff upon said contract.

"The court erred in instructing the jury, both in its main charge and in the special charge given at the request of plaintiff, to the effect that if, prior to the time defendant receiver was appointed, the railway company and plaintiff entered into a contract whereby, in consideration of plaintiff's conveyance of a right of way over plaintiff's land, the railway company agreed to pay plaintiff for supplying water to a tank on said right of way

as much per month as was paid any other person for the same service at any other point on said railway, and that the defendant receiver, after he took charge of said railway, used the right of way so conveyed in operating said railway, then that he was liable on said contract, and it was binding on him as receiver of said railway company."

The proposition under these assignments is that "a receiver is not the representative of, nor in privity with, the company whose property he holds, but is the mere hand of the court appointing him; and the court can not be bound to the continuance and fulfillment of the company's personal contracts, improvident and disastrous though they be, without destroying the court's independence and success in the management of the trust assumed, and creating a privity that the settled rules of law deny."

It is certainly true that courts have no power to create a privity which the law declares shall not exist, but it is a mistake to assume that a receiver empowered to take possession of, control, and operate a railway is in no sense the representative of the corporation that owns it; but this case does not call for a decision as to the extent of his representation, nor as to the circumstances under which his acts will be binding on the company whose property he controls.

It is also erroneous to assert that a court appointing a receiver is under no obligation to continue in force and in some cases to cause to be fulfilled the personal contracts of the company, though they may have been improvidently made. The continuance of the obligation of contracts is not dependent on the will or act of a court, nor can a court in any proper case refuse to execute them.

It is true, however, that it is not every contract a company may have made which a court administering its property through a receiver will cause to be satisfied out of the funds subject to its control, for that must depend on the right to be paid out of the earnings or proceeds of the property in the hands of the court. This specific right may depend on the existence of a lien on the property secured by contract or operation of law; or in the case of public agencies, such as railways, such specific right to compensation to be paid out of earnings of the business, and in some cases out of the proceeds of the corpus of the property, will arise; for parties holding liens on such property, knowing that it must continue to be used in the public business for which the corporation to which it belongs was created, must be understood to consent when they ask that the property be placed in the hands of a receiver that the cost of operating the business shall first be paid, even though resort to the corpus of the property be necessary to accomplish this.

The cases have gone so far as to hold property in the hands of a receiver liable for wages earned before his appointment, for debts contracted to other railway companies in the ordinary course of business, for expenses

incurred in completing unfinished road, and making other permanent improvements, as well as for debts contracted for supplies before the appointment.

If the receiver appointed to take possession of and operate a line of railway, part of which is held under lease by the company of whose property he is given control, does so; or if under like circumstances he takes possession of and uses cars which the company held under contract to purchase, it has been held that the rents, price of cars, or compensation for their use was properly directed to be paid out of earnings.

The contract in question is not shown to have provided in express terms how long appellee should render water service and be entitled to the agreed compensation therefor; but, as compensation to be paid for this service embraced the consideration for right of way, the obligation to make compensation must be held to have been intended by the parties to continue as long as the right for which it was to be paid is exercised, unless appellee should violate his part of the contract.

Has appellee the specific right to be paid out of the earnings of the road or a lien on property in the hands of the receiver? If he has either, the action was properly brought against the receiver, though based on a contract made with the company before his appointment, for it may be asserted that an action against a receiver may be maintained when the creditor has specific right to payment out of funds in his hands.

Under the rulings before referred to, we do not see how the liability of the receiver, or rather the earnings and property in his hands, can be held not subject to the claim of appellee.

The contract on which appellee relies was valid and binding on the company now represented by appellant; he has used the right secured and existing only by reason of the contract on which appellee bases his claim. This was absolutely necessary to the operation of the road appellant was directed to operate, and the court which appointed him could not have intended that he should enjoy the benefit of the contract without assuming its burdens.

If appellant, after making known to the court that appointed him that the contract proved had been made before his appointment, had asked that he be permitted to use the right of way, but that he be relieved from paying for it in accordance with the contract, that court would not and legally could not have given such permission without at the same time requiring appellant to make the compensation agreed upon for the right of way, which the receiver necessarily had to use or acquire another to preserve the continuity of the line.

The grant of right of way was on condition that it should be paid for, and without this none could vest absolutely, and no court could direct its receiver to hold and use this and at the same time refuse to pay for

it in accordance with the terms of the valid contract through which alone permission was obtained and held.

That contract, if carried out, would entitle appellee to payment from the earnings of the road as current expenses, if not from the proceeds of the corpus of the property, even if no lien existed to secure it. If this were not so, then the inquiry would arise whether a lien existed to secure compensation for the right of way. If so, appellee was entitled to judgment against the receiver, to be paid out of the earnings of the road or proceeds of sale of the property; for other lien creditors can not be heard to claim that property which came into the hands of the debtor encumbered with a lien for purchase money should be subjected to the payment of their claims until appellee is paid.

If appellee was the owner of the land over which the railway runs, under the uncontroverted facts the company has the right to it whether he signed the conveyance or not; but as compensation provided by the contract for water service was, in part at least, the consideration therefor, a lien on the right of way, though but an easement, exists to secure in so far its payment.

If title to the land was in Miss James in fact, or only apparently, then under the facts it can not be denied that by her act the right of way vested in the company; but as the promise to pay the consideration therefor was made to appellee with her consent, he has the same right to enforce any existing lien she would have had had the promise been made to her.

This has been recognized in those cases in which one person sells land to another on credit, who, under agreement of the parties, executes note to a third person for the purchase money.

That a lien equivalent to the ordinary lien held by a vendor of land exists in case of grant of right of way where the consideration for the grant is not paid, seems to be very generally recognized.

That such a lien exists was held or recognized in the following English cases: Walker v. Railway, L. R. 1 Eq., 195; Munns v. Railway, L. R. 8 Eq., 653; Ferrers v. Railway, L. R. 13 Eq., 524.

In Railway Company v. Lewton, 20 Ohio State, 401, it appeared that the land owner by binding contract agreed to grant right of way, in consideration of which the company agreed to pay a sum of money at a future day, and to construct road crossings and cattle guards on the owner's land.

The company took possession, and the owner was held to have lien for unpaid purchase money, as well as for damages for failure to construct in accordance with the contract, and that the entire road was subject to sale to satisfy sum due.

In Proult v. Railway Company, 57 Missouri, 263, the right to lien for

unpaid purchase money for right of way seems to have been recognized, and while it was held that ejectment would not lie, the company having occupied the way without objection made on the ground that compensation was not first paid, the court declared that for the protection of the land owner "a court of equity would unquestionably interfere, if necessary, and place the road in hands of receivers until the damages were paid from the earnings."

That lien existed was recognized in Gillson v. Railway Company, 7 Richardson, 180; and in McAuly v. Railway Company, 33 Vermont, 322, it was recognized that such a lien would exist if not cut off by statute.

Elementary writers generally recognize the existence of such a lien. 1 Redf. on Rys., 246; Mills on Em. Dom., 144; 1 Woods Ry. Law, 209; 2 Id., 785.

The price agreed to be paid for water service was not solely the consideration for right of way, for it must be presumed that the water placed in tank ready for company's use was deemed of some value, and that the sum agreed to be paid was as compensation for both things.

The right to recover from the receiver for right of way is clear, and no effort was made in the court below to have the compensation for each ascertained, nor is there any complaint here that the judgment is excessive.

Under this state of facts we are not called upon to decide whether, in the absence of statute, the contract, in so far as it was solely for the purpose of securing water, was one that the receiver would be bound to carry out; but as the contract was valid, and by the company, as well as by the receiver, for a long time deemed advantageous or necessary to the operation of the railroad, it would seem that the receiver had no right to discontinue the use of the water without direction from the court so to do. Had application been made for leave to discontinue use of and payment for water, this, in good conscience, could not have been granted under the facts proved without making compensation to appellee for expenditures, as well as such loss as he might otherwise sustain through breach of the contract. Under the statute, however, we think there can be no question. That provides that "all judgments, claims, or causes of action, when determined, or existing against any corporation at the time of the appointment of a receiver, shall be paid out of the earnings of such corporation while in the hands of the receiver, to the exclusion of mortgage actions; and the same shall be a lien on such earnings." Gen. Laws, 1887, p. 121.

That a claim and cause of action existed against the railroad company under the contract sued on we have already stated, and judgment might thereon have been properly rendered in this case against the company made a defendant. That this was not done does not defeat the right, and the claim being one payable under the statute out of the earnings of the road, the judgment was properly rendered against the receiver.

The direction in the judgment as to the manner of payment does not operate to the prejudice of the receiver or other creditors, and will be affirmed.

*Affirmed.*

Delivered February 4, 1890.