TEXAS & P. RY. CO. v. EL PASO & N. E. R. CO.

(Court of Civil Appeals of Texas. El Paso. April 3, 1913. Rehearing Denied May 8, 1913.)

1. APPEAL AND ERROR (§ 842*)—FINDINGS OF FACT—CONCLUSIVENESS.
Where it is doubtful whether a grantor intended to convey the land or whether the deed was intended as a mere quitclaim, the question is one of fact, under the surrounding circumstances on which the finding of the trial court will be accepted on appeal.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3316–3330; Dec. Dig. § 842.*]

2. COVENANTS (§ 42*) — COVENANT AGAINST INCUMBRANCES—NATURE.
A covenant against liens and incumbrances is distinct from a warranty of title and protects grantee against interests in third persons which, though consistent with the fee being in the grantor, will diminish the value of the estate conveyed.
[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 43; Dec. Dig. § 42.*]

3. COVENANTS (§ 96*) — COVENANT AGAINST INCUMBRANCES—BREACH.
A covenant against liens and incumbrances is breached upon the execution and delivery of a deed, if at all.
[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 111–129; Dec. Dig. § 96.*]

4. COVENANTS (§ 96*) — INCUMBRANCES — BREACH.
Where another than grantor had the title to a tract in fee, free from any easement or servitude in favor of any one else, his claim was an adverse claim of title, but was not an incumbrance upon the estate purported to be granted so as to operate as a breach of a covenant against incumbrances contained in the deed.
[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 111–129; Dec. Dig. § 96.*]

5. EMINENT DOMAIN (§ 271*)—REMEDIES OF LANDOWNER.
A landowner may waive his right to recover land wrongfully held by a railway company for right of way purposes and sue for damages resulting from the taking.
[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 725–736, 741; Dec. Dig. § 271.*]

6. EMINENT DOMAIN (§ 310*)—REMEDIES OF LANDOWNER—EFFECT OF ELECTION.
A landowner, by waiving his right to recover land wrongfully taken for railroad right of way purposes and suing for damages, thereby legalizes the possession, and grants the easement as of the date of his election, so that upon the award of damages he is entitled to have them fixed as a lien upon the easement granted.
[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 826; Dec. Dig. § 310.*]

7. COVENANTS (§ 96*)—BREACH OF WARRANTY.
A grantor would not be estopped from claiming that the facts did not show a breach of his covenant against incumbrances.
[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 111–129; Dec. Dig. § 96.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Daniel W. Williams against the Texas & Pacific Railway Company, in which the El Paso & Northeastern Railroad Company was made a defendant. From a judgment against the first-named defendant, it appeals. Affirmed in part and reversed and rendered in part.

Peyton F. Edwards, of El Paso, and W. L. Hall and Gresham & Freeman, all of Dallas, for appellant. Hawkins & Franklin, of El Paso, for appellee.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

HIGGINS, J. On September 21, 1897, George J. Gould entered into this contract with Charles B. Eddy: "First. Said Gould agrees to procure to be sold and transferred to said Eddy, his representatives or assigns, as soon as the legal formalities pertaining thereto will conveniently permit, so much of the roadbed and grading, right of way track and all other appurtenances, of what is known as the 'Old White Oaks Railroad,' as extends from the intersection of Rand and Main streets, at the crossing of Southern Pacific tracks in the city of El Paso, northeasterly to or towards the boundary line between Texas and the territory of New Mexico, free and clear from any and all liens and incumbrances, for the price or sum of fifty thousand dollars ($50,000). * * * Second. It is understood and agreed that said Eddy, his agents, representatives or assigns, may take possession of said line and appurtenances herein agreed to be sold, at once, upon the execution hereof, and retain and use the same until such time as default, if any, shall occur in making the payments, or any of them, herein above provided for. If for any reason it is found that said Gould cannot cause a free and clear title to be conveyed to said Eddy, said Gould is not to be held liable, personally, in damages for failing to convey and vest such title in said Eddy."

At the time Gould was the president of the Texas & Pacific Railway Company, and Eddy was vice president and general manager of the El Paso & Northeastern Railroad Company, and in the execution of the contract the parties thereto acted in behalf of and for their respective companies, although upon its face the contract does not so disclose. Included in the premises contracted to be conveyed was a right of way through a tract of land in the city of El Paso known as the Cotton addition, being the same right of way condemned in this suit by the appellee. The contract was submitted to the board of directors of the Texas & Pacific Railway Company and by such board adopted and confirmed as the agreement and contract of the appellant. In accordance with such agreement, appellant, on November 16, 1897, conveyed to Eddy the premises so contracted to be conveyed, by deed reading as follows: "For and in consideration of one dollar and divers other good and valuable considerations by it received, the receipt whereof is hereby acknowledged, does by these presents grant, bargain, sell, and quitclaim and convey unto the said Charles B. Eddy, his heirs and assigns, all of its right, title and interest in and to the following described property: So much of the roadbed grading and right of way, track and all other appurtenances formerly of and belonging to the Kansas City, El Paso & Mexican Railway Company of Texas, commonly known as the 'Old White Oaks Road,' as extends from the intersection of Rand and Main streets where Rand street crosses the Galveston, Harrisburg & San Antonio Railway Company tracks, known as the Southern Pacific tracks, on Main street in the city of El Paso, county of El Paso, state of Texas, running in a northeasterly direction to or towards the boundary line between Texas and the territory of New Mexico, said property herein conveyed being more specifically described as follows: Commencing at the intersection of Rand and Main streets where Rand street crosses the Galveston, Harrisburg & San Antonio Railway Company tracks, known as the Southern Pacific tracks, on Main street, in the city of El Paso; thence running * * * to the end of the present track of the Kansas City, El Paso & Mexican Railway Company of Texas, commonly known as the 'Old White Oaks Road,' said point being about eight and 82/100 miles distant from the intersection of said road with the Galveston, Harrisburg & San Antonio Railway, commonly called the Southern Pacific road, in the city of El Paso; thence from the end of said track, course being south 77 degrees, 50 minutes west, to the boundary line between Texas and territory of New Mexico. To have and hold said property, with all its franchises, right of way, roadbeds, tracks, bridges, viaducts, culverts, switches, turnouts, sidings, ties and rails and all other superstructures, erections or fixtures of every sort appertaining to and belonging to so much of said property as is above specifically described, unto the said Charles B. Eddy, his heirs and assigns; and the Texas & Pacific Railway Company hereby covenants with the said Charles B. Eddy, his heirs and assigns, that said property above specifically described, is free of all valid liens and incumbrances, and hereby covenants that it will warrant and defend the possession and title of said property as against all valid liens and incumbrances; and further covenants that it will defend the possession and title of said property to the said Charles B. Eddy, his heirs and assigns, as against the legal claims of all persons claiming or to claim the same, or any part thereof, from, through or under it, the said Texas & Pacific Railway Company."

In further performance of the agreement, appellant, on November 16, 1897, caused Charles F. Satterlee, who held the legal title to the property in trust for it, to convey same to Eddy. The deed recites a consideration of $60,833.33, a part of which was evidenced by purchase-money notes, to secure payment of which a vendor's lien was retained. The description of the property in this deed and the covenants of warranty were substantially the same as were contained in the deed of the Texas & Pacific Railway Company above described. The two deeds were made to Eddy as the agent, trustee, and representative of appellee. On February 15, 1898, Eddy, for a recited consideration of $1 and other valuable considerations, "transferred,

assigned and quitclaimed" unto appellee the premises and property so conveyed to him by appellant and Satterlee.

Upon the date of the execution of the Gould-Eddy contract, the appellant was in possession of the premises and property contracted to be conveyed, and it then delivered full and complete possession thereof to appellee, and appellee since said date has remained in possession. When the premises and property were conveyed by appellant to appellee, the latter did not know the former had no right to convey the right of way across the Cotton addition, and appellee had no actual knowledge of the adverse claim thereto of Frank B. Cotton. Appellee paid to appellant the sum of $60,833.33 in payment for the premises and property conveyed by the deeds above mentioned. Prior to the date of said contract and deeds, the Texas & Pacific Railway Company, or its predecessor in interest, the Kansas City, El Paso & Mexican Railway Company, had taken wrongful possession of the right of way strip across the Cotton addition, and appellant was holding the same as a trespasser; its line of railroad had theretofore been constructed thereon and the same had theretofore and was then being used as a common carrier of freight and passengers. Such right of way across said addition had been taken and was being held without the consent of and over the protest of Frank B. Cotton, the owner of the fee. Neither Cotton nor his successors in interest ever consented to such taking and use, and neither he nor they were ever paid anything for such taking and use or any damages to their abutting property caused thereby. It seems there had theretofore been an attempted condemnation proceeding by the Kansas City, El Paso & Mexican Railway Company, in which an award of $1,000 damages had been made, which Cotton had declined to receive. Evidently these proceedings were insufficient to vest an easement in the railway company; but for what reason it does not appear.

This suit was originally instituted on September 23, 1896, by Daniel W. Williams against the Texas & Pacific Railway Company, C. E. Satterlee, and other defendants, for the recovery of the Cotton addition; he having theretofore acquired the title thereto of Frank B. Cotton. Williams thereafter reconveyed to Cotton, and on January 12, 1901, the latter intervened, claiming title and making the El Paso & Northeastern Railroad Company a party defendant in the cause. Frank B. Cotton died testate on May 11, 1907, and his title to the premises passed to and became vested in Walter B. Grant and William C. Cotton as trustees and executors of his estate. The death of Frank B. Cotton was suggested, and Grant and William C. Cotton as such executors and trustees intervened, and on December 14, 1910, filed their first amended petition for recovery of title to and possession of the Cotton addition against all of the defendants. It was averred that the rental value of the land taken was $3,000 per annum, and that by the use thereof for a railroad and by maintaining a railroad bed thereon and cuts and other spoliations thereof, the rental value of the remainder of the tract had been damaged in the sum of $2,000 per annum, for which amount they prayed judgment against the Texas & Pacific Railway Company and the El Paso & Northeastern Railroad Company for the years they had so had possession of said land. No lien was claimed for such rents and damages to such rental value.

On May 15, 1911, the El Paso & Northeastern Railroad Company filed its first amended answer and disclaimed as to all of the premises in controversy except a portion of lot 5 in block 2 and its right of way, which right of way was a strip extending from the south line of Missouri street in a northeasterly direction across the Cotton addition to its eastern boundary line. In addition to its plea of not guilty as to this property, appellee, in bar of its recovery, pleaded the various statutes of limitation, and by way of cross-action prayed condemnation thereof for right of way purposes in event it was found by the court that Grant and Cotton were the owners of and entitled to the title and possession of same.

On May 22, 1911, the executors and trustees, Grant and William C. Cotton, filed their second amended petition, alleging that it had conveyed certain portions of the premises in controversy to the El Paso & Northeastern Railroad Company and prayed for recovery of title to and possession of the Cotton addition, except the portions so conveyed. In all other respects, this petition was identical with the first amended petition filed December 14, 1910, above noted.

On May 22, 1911, Grant and Cotton also filed their first supplemental petition, replying to the petition for condemnation, in which they alleged the property sought to be condemned by appellee was of the value of $60,000 and that the remainder of the tract would be damaged in the sum of $200,000 by reason of such condemnation and user, and in the event condemnation was decreed they asked judgment against appellee for said amounts and that, whatever amount was recovered, the same be decreed to be a lien upon the property condemned. On the same date the Texas & Pacific Railway Company filed its second amended answer, disclaiming as to all of the lands sued for except certain portions thereof specifically described in its answer. On the same date the El Paso & Northeastern Railroad Company filed a cross-action against its codefendant, the Texas & Pacific Railway Company, alleging the execution of above-mentioned contract between Gould and Eddy; that in executing same the parties thereto represented appellant and appellee respectively; that

pursuant thereto the two deeds above mentioned, dated November 16, 1897, were executed and delivered by appellant and Satterlee to Eddy, and that Eddy thereafter conveyed same to appellee by the deed dated February 15, 1898; that in the event Grant and Cotton recovered its right of way across the Cotton addition, heretofore described, or if it was necessary for it to condemn the same, or if Grant and Cotton were adjudged to be entitled to damages by the condemnation which it sought in its answer above mentioned, then in such event all such damages so adjudged against appellee constituted a lien on the right of way so conveyed by the appellant and was a lien thereon at the time the same was by it conveyed and by the court would be adjudged to be a lien and incumbrance upon the property so conveyed, and appellee would be compelled to pay the damages so awarded to clear its right of way of such lien and incumbrance, and by reason of the covenants and warranties contained in said contract and deeds the Texas & Pacific Railway Company was liable over for any moneys it would be compelled to so pay out; and it accordingly prayed for judgment over against the appellant.

On June 19, 1911, the appellant filed a second amended answer, the details of which it is unnecessary to state, except that it was a denial of any right of recovery over against it by appellee. Other supplemental pleadings and trial amendments were filed by the parties, but statement of their contents is not material to·a consideration of the questions presented by this appeal.

By disclaimers, dismissals of parties and severances, all issues were eliminated except those presented by the pleadings above detailed, whereupon the parties in open court admitted and agreed that Grant and Cotton, as executors of the estate of Frank B. Cotton, deceased, had title to and should recover all of the premises in controversy, except portions thereof specifically described in the decree, and upon such admission and agreement judgment was accordingly entered. Included in the part recovered by Grant and Cotton was the said right of way of appellee across the Cotton addition. Upon the cross-action of the appellee for condemnation of such right of way, the court adjudged it was entitled thereto and entered judgment of condemnation for right of way purposes. It was agreed and admitted by all parties that the damages to Grant and Cotton by reason of such condemnation was $45,000, the same being the value of the land actually taken and damages to the remainder of the tract, for which amount judgment in their favor was rendered against appellee, and it was further decreed that "there existed at the time when the said Texas & Pacific Railway Company first took possession of said property in the year 1897, and when said property was sold and conveyed by said Texas & Pacific Railway Company to Charles

B. Eddy for the El Paso & Northeastern Railroad Company, to wit, the 16th day of November, 1897, and has ever since existed and now exists, a lien upon said property in favor of the testate Frank B. Cotton and the plaintiffs and interveners William C. Cotton and Walter B. Grant for the value of the property taken and damages to that not taken, which amount is by this judgment ascertained as $45,000, and said lien is declared to exist for the security of the payment of said sum of $45,000, which lien is now ordered adjudged and decreed by the court to be and the same is hereby foreclosed, on the right of way condemned as here before described, and the superstructures thereupon. And it is further ordered, adjudged, and decreed by the court that in case of default of payment of said sum of $45,000 an order of sale be issued directing the sale of said property as under execution for the payment of' said sum of $45,000." The appellee then and there in open court paid said sum of $45,000 to Grant and Cotton, and the cause proceeded to further trial upon the issue of whether or not the Texas & Pacific Railway Company was liable over to the El Paso & Northeastern Railroad Company for said sum of $45,-000, which issue upon hearing was resolved against the Texas & Pacific Railway Company. Accordingly, judgment was rendered in favor of the El Paso & Northeastern Railroad Company over against the Texas & Pacific Railway ·Company for the sum of $32,-142.85, the same being the proportionate amount of the incumbrance for which the court held the appellant to be liable. From this judgment against,it for said sum of $32,-142.85, the Texas & Pacific Railway Company has prosecuted this appeal.

[1] The readily apparent issue involved is whether or not the adverse claim of Cotton was within the protecting scope of the covenants of warranty contained in the deed of appellant to Eddy. There is no merit in the contention that the conveyances were mere quitclaims. Garrett v. ·Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850 ; Pool v. Foster, 49 S. W. 923. In any event, it cannot be said the instrument was clearly a quitclaim, and in case it is doubtful whether the grantor intended to convey the premises or merely its right or chance of title, it became a question of fact to be determined in the light of the surrounding circumstances. Threadgill v. Bickerstaff, 87 Tex. 520, 29 S. W. 757 ; Harrison v. Boring, 44 Tex. 262; Breen v. Morehead, 126 S. W. 650. This issue of fact ·by the trial court was resolved against appellant, and the deed will be treated as a conveyance of the property therein described, rather than a quitclaim. The deed contains two distinct warranties: First, a covenant warranting against liens and incumbrances. This warranty is without restrictions. Second, a covenant warranting against adverse claims of title. This covenant was a limited one and warranted only

against parties claiming "from, through, or under" the grantor.

[2] A covenant against liens and incumbrances is quite separate and distinct from a warranty of title, and is intended to protect the grantee against rights or interests in third persons, which, while consistent with the fee being in the grantor, yet diminish the value of the estate conveyed. 2 Devlin on Real Estate (3d Ed.) § 905; 1 Warvelle on Vendors (2d Ed.) § 426; 3 Washburn on Real Property (6th Ed.) § 2385; Bank v. Parisette, 68 Ohio St. 450, 67 N. E. 896; Sanford v. Wheelan, 12 Or. 301, 7 Pac. 324.

[3] It is an engagement that the grantor's title is unincumbered and is a covenant in præsenti which is breached, if at all, upon execution and delivery of the deed. 2 Warvelle on Vendors (2d Ed.) § 971; 3 Washburn on Real Property (6th Ed.) § 2384; Fisk v. Cathcart, 3 Colo. App. 374, 33 Pac. 1004. If the adverse claim of Cotton to the strip of land occupied and used by appellee as a right of way constituted a lien or incumbrance upon the same, then, under the first warranty, liability attaches to the appellant; but if it was not of that character and would properly be regarded as an adverse claim of title against which an unrestricted warranty of title only would protect, then it is apparent that liability does not attach under the second covenant, since it was not a claim originating "from, through, or under" the grantor. As against Cotton, appellee's possession and the prior possession of appellant was that of a trespasser.

[4] Cotton had the title in fee to the disputed strip, charged with no easement, servitude, right, interest, or equity whatever in favor of either of such railway companies, and, to our minds, it is clear that his claim was an adverse claim of title and was in no wise or sense a mere lien or incumbrance upon the estate which appellant undertook to convey to appellee's grantor and agent, Eddy. As a matter of fact, neither the fee nor an easement in the fee for right of way purposes passed by the deed to Eddy, and since nothing passed it is difficult to conceive of there being any lien or incumbrance against which the first covenant would protect. Manifestly there can be no lien or incumbrance when there is no estate to which the same can attach, and appellant owned no estate of any kind or character in the disputed strip and conveyed no estate. An adverse superior title is in no sense an incumbrance. See Buetell v. Courand, 9 Tex. Civ. App. 564, 29 S. W. 1146, in which it was remarked by Judge Williams that an adverse claim of title acquired by limitation is in no sense an incumbrance. In this respect it is radically different from a fee incumbered by a lien or an easement or other servitude. In such case the lien, easement, or servitude is consistent with the fee being in the grantor; there is no such consistency, however, in case of an adverse superior title to the fee. In other words, a covenant against liens or incumbrances necessarily implies that some estate is conveyed by the deed containing the same, and such a covenant would never be broken nor would liability thereon attach by reason of the successful assertion of an adverse claim of title; such an adverse claim being in no sense a mere lien or incumbrance consistent with the fee being in the grantor.

From the language of the covenants contained in the deed evidently it was intended to give an unrestricted warranty against liens and incumbrances and that as against adverse claims of title the warranty should be limited and restricted. The claim of Cotton was an adverse claim of title, and to hold appellant liable therefor under the guise of a lien or incumbrance would be to defeat the manifest meaning of the language used and purpose of the grantor to limit its liability respecting such claims to such only as originated from, through, or under it. To so hold would be in plain contravention of the ordinary meaning of the covenants of warranty and in effect would absolutely destroy the restriction contained in the warranty of title and give to the same the effect of an unrestricted general warranty. If the claim of Cotton was not such a claim as would properly be considered as an adverse claim of title rather than a lien or incumbrance, then there is no claim that would be so regarded; and the effect of the warranty against liens and incumbrances would protect against an adverse claim of any character whatever. However, as we have seen, such a covenant is not of that character, but only "protects the grantee against rights or interest in third persons, which while consistent with the fee being in the grantor, yet diminish the value of the estate conveyed." The Cotton claim was not an interest consistent with the fee being in the grantor, the Texas & Pacific Railway Company.

The question here would present no confusion, we apprehend, but for language used by the Supreme Court in Railway Co. v. Henderson, 86 Tex. 307, 24 S. W. 381. This was an action brought by a landowner against a railway company for damages. Eliminating the facts and issues in the case in no wise germane to the question here presented, the company had entered upon and appropriated land for right of way purposes, and, the parties being unable to agree as to the amount of damages, the question had been submitted to arbitrators, who awarded the sum of $2,250, which was paid. The damages were assessed by the arbitrators upon certain representations made by the company as to the proposed alignment and grade of the railroad to be constructed. A deed for the land was executed upon the faith of these representations, and after the award and after the payment of the sum awarded, but before the deed had passed from the landowner, he discovered the

alignment and grade had been changed to his further damage and that the railroad was not being constructed as represented and contemplated when the damages were assessed and the deed executed. The delivery of the deed was a controverted issue, but whether it had been delivered had no bearing upon the determination of the question decided. As actually constructed the railroad took more land than was originally contemplated, imposed additional burdens upon the land not taken, and deprived the owner of certain privileges promised and provided for in the deed. The landowner brought suit for damages caused by the taking and the manner of constructing the railroad, admitting a credit of the $2,250 previously awarded and paid. Misrepresentation and fraud was alleged as a ground for avoiding the award of the arbitrators and the effect of the deed. Among other items sought to be recovered were certain items of damage arising from a negligent and unskillful construction of the road. For these items it was held plaintiff had no lien upon the right of way; but that he did have such lien for the purchase price, whether the same was to be paid in money or in the construction of crossings or other things to the owner's advantage. It is not so stated, but obviously the lien recognized was that of the equitable lien of the vendor to secure the purchase money. Howe v. Harding, 76 Tex. 17, 13 S. W. 41, 18 Am. St. Rep. 17; Railway Co. v. Lewton, 20 Ohio St. 401; Levy v. Tatum, 43 S. W. 941; Organ v. Railway Co., 51 Ark. 235, 11 S. W. 100; Railway Co. v. Harvey, 107 Pa. 319; Kittell v. Railway Co., 56 Vt. 96. After holding as above stated, the court used the following additional language: "If a railroad company, either with or without condemnation proceedings, take the land of any person for right of way or other use of its railroad, then the owner of the land will have a lien upon the land to secure the payment of all damages which the Constitution and the law requires to be paid before the right to use it vests, which would include all such damages as would naturally or necessarily flow from the taking and proper construction and operation of the road over the land. The value of the land and damages caused to the balance of the tract, and any other damages that might be with reasonable certainty known as the result of the proper construction and operation of the railroad, would be included."

As applied to the facts in that case, the language quoted was undoubtedly correct. The company was not a trespasser upon the land; upon the contrary, it is apparent from a consideration of all the facts in the case that it had entered with the consent of the owner and had an easement in the fee, but had not paid all the damages to which the owner was rightfully entitled by reason of such grant of the easement, entry, and construction of the railroad. The value of the land taken and damages to the remainder of the tract are justly treated and regarded by the authorities as the purchase money of any such easement acquired by a railway company, and, since it is purchase money, the owner of the land taken has a lien upon such easement to secure its payment, whether the entry was made and possession taken by virtue of condemnation proceedings or deed from the landowner or his consent otherwise given. Rightly considered, the Henderson Case cannot be regarded as holding more than this, and it certainly was not intended to be held that in the case of an unauthorized and tortious entry and possession by a railway company that the railway company acquired an easement in the fee and that the landowner was precluded from recovering title and possession and had only the right to assert his claim for damages which would be secured by a lien. In the Henderson Case the landowner was not asserting an adverse title and right of possession, but recognized the right of the railway company to an easement in the fee, and sued for the purchase price thereof by way of an action for damages. Here the landowner successfully asserts and recovers the fee, disputing any right in the company whatever. It is true that here a lien in favor of the landowner was established and foreclosed; but this lien, as we regard it, was an incident to and by virtue of the condemnation proceedings to which appellee resorted by way of cross-action.

No claim of damage which would be secured by lien was asserted by the executors except by supplemental petition, wherein, responding to the cross-action for condemnation, they alleged that if the land was condemned they would be damaged in the sum of $60,000 as the value of the land actually taken, and $200,000 to the remainder of the tract; and asked if such condemnation be granted that their damage be so assessed and lien fixed upon the right of way to secure its payment. And just in this connection it may be observed that if condemnation, for any reason, had been refused, the executors, as the owners of the land, would have recovered the land, and no damages would have been awarded for which they asserted or claimed any lien. If such had been the sole judgment rendered, could it have been seriously contended that such recovery of the land would have constituted a breach of the covenant against liens and incumbrances?

[5] We think not, and that it is manifest no mere lien exists in favor of a landowner who sues for land wrongfully held by a railway company for right of way purposes. If he sees fit, he may waive his right to recover the land and sue for damages resulting from the taking. Railway Co. v. Benitos, 59 Tex. 326; Railway Co. v. Ortiz, 75 Tex. 602, 12 S. W. 1129.

[6] In such case, the owner by such elec-

tion legalizes the wrongful possession and grants the easement as of the date of such election, and upon the award of his damages he is entitled to have the same fixed as a lien upon the easement which he has so granted. Howe v. Harding, supra. In the case at bar the trial court erred in holding that the lien decreed to Cotton's executors existed and was in esse when the Texas & Pacific Railway Company first took possession of the right of way and when it conveyed the same to Eddy. As we view it, the lien did not come into existence except by virtue of the condemnation proceedings instituted by the appellee and would never have existed unless condemnation had been had or the easement for right of way purposes in some other manner had lawfully passed from the owner of the land to the railway company. We therefore conclude: First. The claim of Cotton to the strip of land occupied by appellee for its right of way was an adverse claim of title, and in no sense an incumbrance or a mere right to compensation for damages the payment of which was secured by lien. Second. The covenant against liens was not breached by the judgment of the court fixing a lien upon the right of way awarded by the condemnation to secure the payment of the damages assessed, because such lien did not exist and was not in esse when the deed containing the covenant was given, and because such lien came into existence only by virtue of condemnation proceedings instituted by appellee long subsequent to the making of the covenant, which proceedings were had to protect appellee in its possession against the successful assertion of an adverse claim of title, and which lien would never have come into being and would never have been fixed upon the land had condemnation for any reason been denied.

It is most ingeniously argued by appellee's counsel that what was undertaken to be conveyed by the deed was not the fee to the strip of land, but an easement therein for right of way purposes, together with the superstructures thereon; that this easement so conveyed was weighted with "a paramount right" of the owner to compensation for such easement, which paramount right to compensation was an incumbrance or lien upon the easement conveyed and was protected against by the first covenant. As is readily apparent, this conclusion is based upon the premise that appellant had title to such easement and that Cotton's estate in fee was incumbered thereby. If the premise be correct that appellant had title to such easement and that same passed to appellee, undoubtedly Cotton had merely a lien upon the same to secure payment of his damages by reason of such taking, and the covenant against liens and incumbrances was broken, and appellee is entitled thereunder to pro-

tection; but the premise is clearly false, for, as we have seen, the railway companies were trespassers, and Cotton's title was subject to no easement or servitude in their favor. The premise being false, the conclusion falls with it.

[7] The doctrine of estoppel is in no wise applicable. It may be conceded that appellant is estopped to deny it had title to the easement for right of way purposes which it undertook to convey, but its liability herein is measured by the covenants of warranty contained in its deed. It is incumbent upon appellee to bring its claim within the scope of these covenants, and, of course, appellant would not be precluded by estoppel from contending that the facts adduced by appellee did not show a breach of its covenants.

Under the view entertained of the proper disposition to be made of this case, it becomes unnecessary to dispose of the remaining assignments, which relate to the amount of the judgment.

The judgment and decree of the lower court is in all things affirmed, except in so far as concerns the judgment rendered in appellee's favor upon its cross-action against appellant for the sum of $32,142.85, with interest; in this respect, the judgment is reversed and here rendered, that appellee take nothing by such cross-action, and that appellant be discharged therefrom and go hence without day.