■ CLAUDIA MICHALSON, Appellant, v ROBERT L. MICHALSON, Respondent.—In an action for a divorce and ancillary relief, the plaintiff wife appeals from stated portions of an order and judgment (one paper) of the Supreme Court, West-

chester County (Marbach, J.), dated September 25, 1984, which, *inter alia,* (1) granted the defendant husband's cross motion for a downward modification of temporary maintenance, retroactive to September 23, 1983, and thereupon granted her motion for leave to enter a judgment for arrears in temporary maintenance only in the sum of $4,200, (2) directed the sale of the marital residence and a distribution of the proceeds thereof, (3) awarded her permanent maintenance in only the sum of $100 per week plus "house payments" until the marital residence was sold and thereafter the sum of only $200 per week, and (4) directed an equitable distribution of the marital assets of the parties.

Order and judgment modified by (1) adding to the third decretal paragraph thereof, after the word "granted" the words "to the extent of reducing the sum awarded as temporary maintenance from $350 per week to $100 per week, retroactive to September 23, 1983, until July 15, 1984", (2) adding to the fourth decretal paragraph thereof after the words "ADJUDGED that" the word "plaintiff's" and by deleting therefrom all words after the words "application for" and substituting therefor the words "leave to enter a judgment for arrears in temporary maintenance from September 23, 1983, is granted and the plaintiff is awarded judgment against the defendant for said arrears from September 23, 1983, until July 15, 1984, in the sum of $4,200, and it is further", and (3) by deleting the thirteenth decretal paragraph thereof. The findings of fact of Trial Term are modified by deleting from the last paragraph on page two of its opinion, dated July 10, 1984, the words "on his counterclaim in" and by adding thereto after the word "proceeded" the words "only on the allegations of cruel and inhuman conduct contained in subdivision (b) of", and by deleting therefrom the 10 words in the last two lines of said page of Trial Term's opinion between the word "she" and the word "falsely", and by deleting the finding that defendant owned only four issues of bonds with an aggregate value at maturity of $100,000, with a present value of approximately $55,000, and substituting therefor a finding that defendant owned bonds with an aggregate value at maturity of $600,000. As so modified, order and judgment affirmed, insofar as appealed from, without costs or disbursements. As so modified, the findings of fact of Trial Term are affirmed, insofar as reviewed, and the matter is remitted to the Supreme Court, Westchester County, for a hearing to determine the present value of the bonds owned by defendant and to make an appropriate equitable distribution thereof in accordance herewith.

Defendant admitted the ownership of municipal and State bonds with an aggregate value at maturity of $100,000. Plaintiff alleged the existence of additional bonds with an aggregate value at maturity of $560,000. The trial court's determination that the plaintiff failed to prove the existence of these additional bonds is contrary to the evidence. Defendant's tax returns for the 1978 through 1982 tax years and accountant's worksheets used in the preparation of these returns clearly show that the defendant still owned bonds with an aggregate value at maturity of nearly $700,000.

We disagree with the defendant's contention, accepted by the trial court, that information contained in statements of his brokerage account with Lehman Brothers Kuhn Loeb (hereinafter Lehman Brothers) contradicted and rebutted the conclusion that he still owned the additional bonds. That contention is based on the incorrect assumption that all bonds owned by the defendant would appear in the Lehman Brothers account statements. The Lehman Brothers account was used primarily to buy and sell the bonds. When a bond was not to be traded over a long period of time it would be "deliver[ed]" to the defendant and taken out of the account. Thereafter it would not appear in the account statements. Indeed, several of the bonds shown by the tax asset sheets as still belonging to the defendant reappeared in the Lehman Brothers account by being "receive[d]" into the account so that they could be sold.

According to the statements in the record, sales of some of the bonds left the defendant with bonds having an aggregate maturity value of $600,000 as of the date of the trial herein (*see,* appendix hereto). Absent any explanation by the defendant as to the disposition of any other bonds, we conclude that these bonds remained defendant's property (*Noce v Kaufman,* 2 NY2d 347, 353; *Matter of Commissioner of Social Servs. v Martinez,* 96 AD2d 496, 497). There is no support in the record for the conclusion of Trial Term that any bonds, other than those specifically shown in the statements, were delivered to the Sterling National Bank or that any of the tax shelter investments made by defendant between 1974 and 1980 could have been financed by proceeds from sales of these bonds.

While the face value of the bonds is $600,000, the matter must be remitted to fix the present value of each bond and for the entry of an appropriate amended judgment directing an equitable distribution of the present value of the bonds in question (*see, Damiano v Damiano,* 94 AD2d 132).

Finally, the judgment is corrected to award the $4,200 arrears in payment of temporary maintenance, in favor of plaintiff, as indicated correctly in the decision, rather than in favor of defendant. The findings of Trial Term are also corrected to reflect the allegations of the pleadings actually admitted.

We find no error with the trial court's remaining determinations as to the equitable distribution of marital property, maintenance, or that the marital house be sold.

APPENDIX:

### BONDS OWNED BY DEFENDANT

| PURCHASE DATE | SECURITY | PURCHASE PRICE | MATURITY VALUE |
|---|---|---|---|
| 6-2-76 | Virginia | $23,867 | $25,000 |
| 6-9-76 | *North Carolina | 24,466 | 25,000 |
| 6-14-76 | Texas | 21,194 | 25,000 |
| 6-15-76 | Texas | 21,194 | 25,000 |
| 6-16-76 | *North Carolina | 25,517 | 25,000 |
| 9-10-76 | South Carolina | 50,770 | 50,000 |
| 3-10-77 | Texas | 35,263 | 35,000 |
| 3-10-77 | Virginia | ** | 15,000 |
| 4-10-78 | York, Pennsylvania | 96,682 | 100,000 |
| 4-25-78 | Nashville, Tenn. | 105,148 | 100,000 |
| 11-15-78 | Texas | 48,625 | 50,000 |
| 3-4-80 | Illinois | 83,639 | 100,000 |
| 12-28-81 | Wisconsin | 12,219 | 25,000 |
| 12-29-81 | *North Carolina | 13,875 | 25,000 |

Total: $625,000
−25,000

Net Total: $600,000

\* Defendant owns two of these three sets of bonds, but it is unclear which two remain.
\*\* Not ascertained.

Mangano, J. P., Gibbons, Bracken and O'Connor, JJ., concur.