Fort Worth & Denver City Railway Company v. A. D. Rogers.

Decided October 14, 1899.

**1. Pleading—Personal Injuries—Allegata and Probata.**

In an action for personal injuries, under an allegation that plaintiff's back was sprained, proof of injury to the kidneys and bladder is not admissible.

**2. Railway Companies—Stipulations Against Liability Invalid.**

Since the Constitution (article 10, section 2) declares all railway companies common carriers, and the statute (Revised Statutes, article 319) provides that the duties and liabilities of carriers in this State shall be the same as at common law, and also (article 320) that railway companies shall not in any manner whatever limit or restrict their liability as it exists at common law, a railway company can not, by a release taken in advance and in consideration of permitting one to be carried as a passenger on a freight train, exempt itself from liability for damages resulting from its own negligence.

**3. Same—Common Carriers—Rule of Common Law.**

The rule at common law is that a common carrier can not stipulate for exemption from liability for the negligence of himself or his servants.

Appeal from Wise. Tried below before Hon. J. W. Patterson.

*Stanley, Spoonts & Thompson* and *Robt. Harrison,* for appellant.

*R. F. Spencer, Terrell & Simmons,* and *J. M. Basham,* for appellee.

HUNTER, Associate Justice.—On the trial of this cause the plaintiff was permitted to prove by his own evidence and by Dr. York's that "his kidneys received a permanent injury from the effects of the injury which he received at the time of the accident in which he was injured, and that said doctor had discovered pus in his urine, and also that, as a result of said injury, the bladder had been injured so he could not retain his urine and had been compelled to wear an artificial rubber apparatus to receive his urine." This evidence was objected to on the ground that the petition contained no allegation to support it.

The allegation of the injuries received as contained in the petition is as follows: "Thereby throwing plaintiff down against the hand-railing on the end of said caboose with great force, striking, shocking and knocking him senseless, cutting and bruising his head, face, and neck,

and spraining his back, and so disabling him that he was unable to care for himself."

It is contended by appellee's counsel that this evidence was relevant under the allegation of "spraining his back;" that the injured condition of the kidneys and bladder was only evidence to prove that the back was severely sprained; that such injuries were the natural and necessary result of spraining the back, and the learned counsel cite Railway v. White, 51 Southwestern Reporter, 855, and Railway v. Curry, 64 Texas, 85, to sustain their contention.

But in our opinion neither of these cases, nor any other we can find, sustains their position. Only such injuries as are the natural and necessary results of the injury alleged are relevant. In the White case, supra, the injury alleged was to the "chest," and it was held relevant to prove the spitting of blood. The chest is that part of the body from the neck to the abdomen, and includes the cavity in which the heart and lungs are situated. The spitting of blood therefore might be the natural and necessary result of a severe injury to the chest. But the "back" is defined to be, "in human beings, the hinder part of the body, extending from the neck to the end of the spine." Webster's Int. Dict., 1891.

The same author defines "sprain" as follows: "To weaken, as a joint, ligament or muscle, by sudden and excessive exertion, as by wrenching; to overstrain or stretch injuriously, but without luxation; as to sprain one's ankle." To sprain the back, then, would mean to weaken the back by injuring the joints, ligaments, or muscles of the hinder part of the body between the neck and end of the spine, by wrenching or over-stretching them, and, it seems, would not refer to injury, permanent or otherwise, to any of the abdominal organs or glands, such as the stomach, bowels, bladder, or kidneys.

The evidence complained of tended to prove injuries to the kidneys and to the bladder, not to the joints, ligaments, or muscles of the back, and, from our examination of the record, were the most serious injuries proved, and must have materially influenced the amount of the verdict, which was for $1500. We think the admission of this evidence was error for which the judgment will have to be reversed.

Another very serious question is raised by the pleadings in this case and will again come up for decision in the trial court, and it therefore becomes our duty to decide it now. The answer contained the following plea in bar:

"That at the time plaintiff was injured he was traveling on a freight train of defendant, and that it was contrary to the rules of the company for freight trains to carry passengers; that the company had in operation an ample passenger train service between these two points, and that it had been repeatedly solicited by various traveling men to permit them to take passage on its freight trains, which it had refused to do for a long time, but that on the 23d of March, 1897, it caused to be issued a circular which in effect permitted passengers to ride on its

local freight trains upon the signing by the said passengers of a release of all claims for damages for any injury that might arise to them while they were passengers on such trains.

"The defendant further alleges that when the plaintiff took passage on its local freight train he had secured such a permit to ride on such train previously, and that he presented to the defendant his application for the above described permit, and that he was a passenger under said permit, and assented to the stipulations in the application, which were:

"First. That the train was not a passenger train on which passengers were received for passage.

"Second. That said train was not equipped for the accommodation of passengers, and in traveling thereon plaintiff incurred additional risk of injury to his person and property over that incident to traveling on regular passenger trains, and that in consideration of being permitted to take passage on said freight train he released the said Fort Worth & Denver City Railway from any damage occurring to him when on said train, whether happening from negligence of said company or otherwise.

"Third. That it would not be necessary nor would he require the defendant company to stop its trains at any depot platform or station to allow him to board or alight or receive or discharge baggage from said train.

"Fourth. That he recognized the fact that defendant has ample passenger equipment to accommodate the travel upon its line, and that travel upon said passenger trains was attended with little or no danger to passengers, and that he adopted the expedient of being carried on said freight train for his own convenience, without the desire, suggestion, or solicitation of defendant, and that he assumed all risk of damage to person or property incident to said passage, whether occurring through negligence or otherwise.

"Fifth. That he had read, or had read to him, all the foregoing conditions and stipulations of said application, and that he thoroughly agreed to each and all of them.

"Defendant alleged further that without such release signed by plaintiff, plaintiff would not have been allowed to take passage on said local freight train, and that no conductor has authority to carry passengers on said local freight trains without such permit, nor has any station agent authority to sell a ticket or issue permit for transportation on freight trains without such application being duly presented releasing defendant from all damages arising from the operation of said freight train; and wherefore, plaintiff having entered into said agreement and having waived all claim for damages arising from any injury which might be received on said freight train, he has estopped himself from maintaining this suit.

"Further, that under the law the defendant was not required to carry passengers on said freight trains, and carried them only under the above set out circumstances, and plaintiff, having voluntarily taken

passage on freight train, and having voluntarily executed said release in consideration of said passage should not be permitted to recover."

To this plea the plaintiff demurred, upon the ground, substantially, that the contract alleged to have been entered into by plaintiff is contrary to law, in that it was an attempt on the part of the defendant, a common carrier of passengers, to exempt itself from liability for the negligence of its agents and servants in the performance of its functions as such carrier.

The learned judge below sustained this demurrer, and the correctness of his action in so doing is earnestly controverted here, both in a printed brief and a very able argument on the part of Mr. Harrison, one of the attorneys for appellant, whose exhaustive research has brought together in his brief, it seems, about all the authorities on the subject. His treatment of the question is fair and able. He admits that the general rule is that a common carrier of passengers can not by any contract exempt itself from liability to the passenger for injuries received on account of the negligence of the carrier or of its servants or agents, in any case *where by law it is the duty of the carrier* to accept and carry the passenger, but he contends that where no obligation rests upon the carrier to accept and carry the passenger in the particular case, then the carrier is at liberty to make such a contract with the passenger as it pleases.

This contention, it seems, is sustained by the English authorities, and also by many American decisions. See 4 Elliott on Railroads, p. 2600. But our Supreme Court, it seems to us, have already settled this question in Texas, and it is only necessary to refer to the very able and exhaustive opinion of Justice Stayton in Railway v. McGown, 65 Texas, 643, and to the case of Railway v. Ivy, 71 Texas, 409, following it, for the reasons of the rule as there laid down.

We understand these cases to lay down the broad rule that a railroad company can not, in any case where it undertakes to carry a person, exempt itself by contract from liability to that person for damages occasioned by the negligence of itself or servants. This would seem to be the only logical conclusion deducible from our constitutional and statutory law. Our Constitution declares all railroads "public highways," and all railroad companies "common carriers." Const., art. 10, sec. 2. Our statute on carriers provides: "The duties and liabilities of carriers in this State shall be the same as are prescribed by the common law." Rev. Stats., 1895, art. 319. And further: "Railroad companies * * * shall not limit or restrict their liability as it exists at common law, by any general or special notice, or by inserting exceptions in the bill of lading or memorandum given upon the receipt of the goods for transportation, or in any other manner whatever, and no special agreement made in contravention of the foregoing provisions of this article shall be valid." Id., art. 320.

The constitutional provision above cited fixes the legal status of railroad companies in this State as common carriers. They can not,

therefore, by any contract or in any other manner constitute themselves private carriers. If they undertake to carry a passenger at all, they do it as a common carrier, and their liabilities are the same as those prescribed for such carriers by the common law, and no contract or agreement entered into relating to the service can limit or restrict such liabilities or constitute them private carriers. The rule at common law is that a common carrier can not stipulate for exemption from liability for negligence of himself or servants.

We are therefore of opinion that the court did not err in sustaining the demurrer to the aforesaid plea of defendant. For the reason given, however, the judgment herein is reversed and the cause remanded.

*Reversed and remanded.*