## INTERNATIONAL–GREAT NORTHERN R. CO. v. LUCAS et al.

### No. 4387.

Court of Civil Appeals of Texas. Texarkana.

Feb. 8, 1934.

Rehearing Denied March 1, 1934.

B. F. Davis, of Jacksonville, and Sewell, Taylor, Morris & Garwood and W. J. Knight, all of Houston, for appellant.

Seale & Thompson, of Nacogdoches, Norman & Norman, of Rusk, King, Wood & Morrow, of Houston, G. W. Gibson, of Jacksonville, and Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellees.

JOHNSON, Chief Justice.

This is an appeal from a judgment of the district court of Cherokee county rendered against appellant, International-Great Northern Railroad Company, defendant in the trial court, in favor of appellees, surviving wife and children of Luke L. Lucas, deceased, plaintiffs in the trial court, awarding plaintiffs damages because of injuries to and death of Luke L. Lucas resulting from alleged negligence of the defendant, its agents, servants and employees.

At the time of his death, Luke L. Lucas was a member of the partnership of Lucas & Lucas, composed of Luke L. Lucas and G. E. Lucas, which partnership was under written contract with appellant engaged in the work of building, servicing, and draining roadbeds for the construction of switches and spur tracks for defendant. By the terms of this contract, and as a part of the consideration for the work to be done, appellant contracted to and did furnish the partnership transportation over its railroad lines for the necessary persons, tools, outfits, supplies (except commissary supplies and feed for teams), and material required for and used solely in the performance of the work covered by the agreement, which transportation to be used only by persons and for the purposes for which the same was furnished; and the appellant had issued to Luke L. Lucas an annual pass over its railroad lines.

The work was at different points on appellant's railroad lines running through the territory known as the East Texas oil field. Luke L. Lucas was killed as the result of a head-on collision between two motorcars belonging to the appellant. The collision occurred at a sharp curve on appellant's line, about seven miles south of Kilgore, at about 6:10 p. m., February 4, 1931. Luke L. Lucas was returning to Kilgore from the work in which he had been engaged at points south of Kilgore. The motorcar on which he was riding was in charge of and being operated by, appellant's agent, L. M. Elledge, an assistant engineer of appellant, and who had for appellant during the day been engaged in surveying some spur track locations and pointing out to Luke L. Lucas the grading work desired by appellant to be done thereon by Lucas & Lucas under their contract. The other motorcar was being operated by Zay Gardner, who, under contract with appellant, was laying the rail for appellant on its switch and spur track beds built by Lucas & Lucas. The Zay Gardner contract for laying the rail was similar in material respects to the contract under which Lucas & Lucas were build-

ing the roadbeds; appellant agreed to furnish Gardner transportation; they were independent contractors. This motorcar was by appellant furnished Gardner in transporting materials and his rail-laying crew to and from work; the appellant furnishing Gardner information for its movements through its local agents and dispatchers giving him a "line-up" on the location and movement of other cars and trains on appellant's lines, and at the time of the collision this motorcar was transporting Zay Gardner's rail-laying crew from work near Kilgore to Gardner's headquarters south of Kilgore.

Appellees alleged generally that the collision of the two motorcars and the injuries to, and the resulting death of, Luke L. Lucas, was the direct and proximate result of the negligence of the appellant, its agents, servants and employees.

The appellant in its answer specially pleaded, as a bar to appellees' right to recover, certain provisions of its contract with the partnership of Lucas & Lucas. On the indemnity feature of the contract, the appellant pleaded a cross-action seeking to recover over against appellees and against G. E. Lucas, the surviving member of the partnership of Lucas & Lucas, for such amount, if any, recovered by appellees against appellant. Appellant further pleaded that Luke L. Lucas was guilty of contributory negligence in the following respects: (1) That Luke L. Lucas was riding on the motorcar with his back in the direction the motorcar was moving and his face turned in the opposite direction; (2) that he was riding on said car in such position that he could not, without turning his head, see another car approaching from an opposite direction; (3) in not, in fact, seeing the other motor approaching in time to avoid the collision; (4) in failing to remove himself from the motorcar immediately prior to the collision; (5) and that he failed to keep a lookout along the track ahead of the motorcar on which he was riding.

The appellant further pleaded that Luke L. Lucas and L. M. Elledge, the agent of appellant who was operating the motorcar on which Luke L. Lucas was riding at the time of the collision, were engaged in a joint enterprise, by reason of which the negligence, if any, of the agent of appellant, was imputed to the deceased, Luke L. Lucas.

The court sustained appellees' exceptions to appellant's plea in bar and cross-action based upon the contract, and to appellant's plea of joint enterprise. The court also sustained the plea of misjoinder of G. E. Lucas, and

dismissed him from the suit. To which rulings of the court appellant duly excepted.

The case was tried to a jury, and in answer to special issues the jury found:

"1. That the collision between the motor cars was due to the negligence of the agents, servants and employees of the defendant in charge of the operation thereof, as the term 'agents' was defined by the court.

"2. That such negligence was a proximate cause of the injuries to and death of Luke L. Lucas.

"3. That Luke L. Lucas was at the time of his death a 'passenger' on the motor car upon which he was riding, as the term 'passenger' was defined by the court.

"4. That Luke L. Lucas was not negligent in occupying the position upon the motor car which he was occupying at the time of the collision.

"5. That Luke L. Lucas was not guilty of negligence in failing to remove himself from the motor car prior to the collision.

"6. That Luke L. Lucas on the occasion in question exercised that degree of care in relation to keeping a reasonable lookout along the track that an ordinarily prudent person would have exercised under the same or similar circumstances.

"7. That Luke L. Lucas did not have an equal right (express or implied) with the defendant's agent and employee operating the motor car upon which Lucas was riding to supervise, direct and control the operation of the motor car at the time of the collision.

"8. That the plaintiffs' damages were in the sum of $26,044.00."

Judgment was accordingly entered for appellees, and appellant has appealed. The findings of the jury are not without support in the evidence, and we adopt them as the facts.

Appellant's first ten, and No. 25, propositions bring into consideration the action of the trial court in denying its plea in bar and cross-action based upon the contract between appellant and the partnership of Lucas & Lucas, the provisions of which relevant to the questions presented are found in sections 3, 4, and 5 of the contract. The pertinent terms of section 3 are: "The Contractor will use proper care and vigilance to avoid injury to persons or property and will conduct the work so as not to interfere with the movement of trains or other operations of the railroad. * * * The Contractor herein is an independent contractor and persons employed by him or it are in no sense employees of the Company."

Section 4: "The Contractor (Luke L. Lucas and G. E. Lucas) further expressly covenants and agrees that in case of accident caused by act or omission of the Contractor, or of any agent, servant or employee thereof, * * * which shall result in damage or injury to the Contractor, * * * the Contractor will acquittance and full discharge give. * * * And in case of claim made or suit brought against the Company (International-Great Northern Railroad Company) arising out of or on account of any such personal injury or death * * * the Contractor hereby expressly agrees and binds himself or itself, and his or its successors and assigns, to truly defend, indemnify and forever save harmless the Company. * * *"

And section 5: "The Contractor agrees * * * to assume all liability for or on account of injuries to or deaths of the agents and employees of the Contractor, * * * which may occur during the transportation of said persons * * * over the lines of the Company * * * by reason of the negligence of the agents and employees of the Company or by reason of the operation of the trains, cars and engines of the Company or otherwise; and the Contractor hereby agrees to indemnify and save harmless the Company from all claims, expenses and damages or recoveries for or on account of anything the liability for which is by this paragraph hereby expressly assumed by the Contractor."

Referable to the provision of section 3 of the contract, it was alleged in bar of appellees' right to recover that Luke L. Lucas neglected and failed to "use proper care and vigilance" in the particulars mentioned in appellant's plea of contributory negligence; and it is the contention of appellant that the indemnity provisions of section 4 of the contract constitute a bar to appellees' recovery, and give appellant the right to cross-action for recovery over and against the appellees and G. E. Lucas, under appellant's allegations that the collision was due to the "acts and omissions" of Luke L. Lucas in the particulars mentioned in appellant's plea of contributory negligence, and that the action of the court in sustaining appellees' special exceptions to appellant's said plea in bar and cross-action based upon the provisions of the contract in the particulars mentioned was error. The alleged "acts and omissions" complained of as constituting neglect and failure

of Luke L. Lucas to "use proper care and vigilance" were submitted to the jury under appellant's plea of contributory negligence, and were by the jury determined against appellant, and for which reason, without reference to the other grounds on which the special exceptions were sustained, the assignments of error directed at the action of the court in this respect do not present reversible error.

■ Appellant contends that section 5 of the contract is a bar to appellees' recovery for injury resulting from negligence of the appellant, and indemnifies appellant against liability for its negligence, and creates a right of recovery over and against appellees and G. E. Lucas, in that it is contended by appellant that the term "agents" covers and includes the contracting principal, Luke L. Lucas, wherein the contractor (Lucas & Lucas) assumed to indemnify appellant company against "all liability for or on account of injuries to or death of the *agents* and employees of the contractor." We do not believe that appellant's contention in this respect can be sustained. Such contracts of indemnity are to be strictly construed in favor of the indemnitor, and it cannot be extended by construction or implication beyond its plain terms. 31 C. J. § 19, p. 427; 23 Tex. Jur. § 7, p. 526; Smith v. Scott (Tex. Civ. App.) 261 S. W. 1089; Nat'l Surety Co. v. Roth, 208 Mo. App. 277, 232 S. W. 737. The provisions of section 5 do not expressly state that the contractors, Luke L. Lucas and G. E. Lucas, assume and indemnify appellant against negligence of appellant company resulting in injury to the contractors themselves. "Injuries to the contractor," Lucas & Lucas, is not covered, unless in the clause "injuries to or death of the *agents* and employees of the contractor," the word "agents" was meant to include the contractors themselves. Such does not from the contract appear to have been the intention; for, in dealing with the same subject-matter, injuries to persons, in section 4 of the contract, wherein the contractors indemnify the appellant company against liability for injuries to persons caused by acts or omissions of the contractors, their agents and employees, we find that "injury to the contractor" is expressly included. The principals of a partnership become agents of the other members of the partnership when acting in partnership affairs. An agent, on the other hand, and in the usual meaning, is one not acting for himself and others, but one acting for his principal alone. The term "agent" as used in section 5 of the contract

does not necessarily include the contracting principals, and since the contract in dealing with the same subject-matter, injuries to person, in the two sections of the contract, and in one of which, section 4, it expressly included "injuries to the contractor," and in the other instance, section 5, it omitted the terms "injuries to the contractor," it is not thought that "injuries to * * * agents * * * of the contractor" includes personal injuries to the contractor, Luke L. Lucas, himself.

■ It is thought that the action of the trial court in sustaining appellees' exceptions to appellant's said plea in bar and cross-action, based upon the contract is sustained upon the further ground that appellees' suit is founded upon injuries to and death of Luke L. Lucas resulting from negligence of the agents, servants, and employees of appellant while Luke L. Lucas was being transported as a passenger by appellant, a common carrier, over its main line of railroad, by reason of which any indemnifying terms of the contract, in so far as they are alleged to be a bar to, or create the right of cross-action against, appellees' recovery, in the circumstances of this case are against public policy and void. The judgment of the trial court awarding recovery is based upon findings of the jury in response to issues made under such allegations, which findings are supported by the evidence.

In this respect it is the contention of appellant that its contract with Lucas & Lucas was in its private capacity and in regard to matters not performed or carried on in the discharge of its functions as a public carrier, and comes within the rule stated in M., K. & T. Ry. Co. v. Carter, 95 Tex. 461, 68 S. W. 159, 164, and subsequent cases following it, and is not in violation of law and public policy of this state. In the Carter Case, supra, the railroad company for the convenience of Carter Bros. contracted to and did build and maintain a side track and switch on its line of railroad at and near Carter Bros.' sawmill; and, as an inducement to get the railroad company to locate the switch at this point, Carter Bros. contracted to indemnify the railroad company from all liability for damages arising from injury to or for the killing of stock belonging to them or their contractors or employees by the locomotives and cars of the railway company and from all damages resulting from injury or destruction of the property of Carter Bros., their contractors and employees, caused by fire from any locomotive of the railway company at or about the side track and switch. Car-

ter Bros.' sawmill and lumber was destroyed by fire caused by the alleged negligence of the railroad company's employees operating its engine on the switch. The railroad company pleaded the contract as a bar of Carter Bros.' right to recover. The Supreme Court held that the contract was not about a matter within its duties as a public carrier, and was not void as against the statute or declared public policy of the state of Texas, and that the contract did constitute a bar to recovery against the railroad company. The court said:

"In order to bring the contract within the terms of the statutory prohibition, it must embrace property for which the railroad company would be liable as common carrier at the time of its destruction. The terms of the contract do not embrace property for which the railroad company could be held liable as common carrier. Therefore it is not within the statutory inhibition. * * * A railroad company, when not contracting in its character of common carrier has the same right of contract as other corporations or persons, and in many instances may make contracts for immunity from liability on account of the negligence of itself and servants. * * * In order for the contract to violate the public policy of the state, the subject of it must be such as that policy applies to; for, if the relations of the parties be different, the same rules of law will not govern them. This public policy of the state relates to conditions which arise out of the construction and operation of a railroad, and out of the pursuits of business in its vicinity; but the parties in this case established by their contract a switch where none was required by the existing conditions of business, or for the public use, and it was established solely for the promotion of the private interests of the appellees, to develop at that place a business out of which would arise increased risks to the railroad company in the operation of its locomotives. By the terms of the contract, the exemption from liability is limited to such property as might belong to appellees, situated at and about the switch, for which the railroad company was not responsible as a common carrier."

It will be noted that the contract in the Carter Case was not with respect to carriage of property or transportation of persons over the railroad's line, and was not within its business as a common carrier, which is the point of difference from the particular terms of the contract in the instant case relative to the particular circumstances in which Lu-

cas received his injuries; that is, Lucas was being transported by appellant over its line of railroad at the time of his injury. The reasoning for the rule in the Carter Case is that the railroad company, with regard to matters not within the scope of its business and with respect to which it owes the public no duty in its capacity as a common carrier, has the right to act in its private capacity and to contract for immunity from liability for negligence as a condition precedent to such undertaking. But this right to restrict its liability for negligence does not extend to matters within the scope of its business as a common carrier. It is the business of a common carrier to carry passengers and property for hire. If it undertakes to transport a person not its employee, the relation of carrier and passenger arises and exists between them, and with respect to which relation it cannot by contract lawfully constitute itself a private carrier in the particular of being relieved of its common-law liability as a common carrier. In G., C. & S. F. Ry. Co. v. Wilson, 79 Tex. 371, 15 S. W. 280, 281, 11 L. R. A. 486, 23 Am. St. Rep. 345, Chief Justice Stayton said: "We are of opinion that essentially the relation of carrier and passenger exists in every case in which the carrier * * * agrees to transport another not in its employment. * * * It is enough that he is lawfully on the car, and entitled to transportation, to give to him the character of passenger, and to entitle him to recover for an injury resulting from the negligence of the carrier or its servants, if this occurs without fault on his part."

It is not material that Lucas was being transported on a motorcar instead of on a train. In Trinity Valley R. Co. v. Stewart (Tex. Civ. App.) 62 S. W. 1085, 1086, it is said: "Whatever the character of the train when the company undertook to carry him as a passenger, it assumed the duty towards him of exercising a high degree of care in its operation, so as not to injure him." This was a lumber car. In Prince v. I. & G. N. Ry. Co., 64 Tex. 144; Id., 77 Tex. 560, 14 S. W. 171, 19 Am. St. Rep. 795, the means of transportation was a handcar. In Ft. W. & D. C. Ry. Co. v. Rogers, 21 Tex. Civ. App. 605, 53 S. W. 366, it was a freight train. In Mo. Pac. Ry. Co. v. Ivy, 71 Tex. 409, 9 S. W. 346, 1 L. R. A. 500, 10 Am. St. Rep. 758, it was a stock train. In T. & P. Ry. Co. v. Fenwick, 34 Tex. Civ. App. 222, 78 S. W. 548, 551, it is said: "Now, it will not do to say that because the railroad company is under no legal obligation—not its business—as a common carrier,

to transport a person at a reduced rate of fare, or without compensation, or to transport him in an unusual way or at an irregular hour, it therefore may undertake such transportation as a private carrier upon terms of liability of its own making. If it undertakes the transportation at all, it does it in the capacity of a common carrier."

It is the undertaking of the common carrier to transport a person over its line of railroad that constitutes the relation of passenger. Such an undertaking is of that character within its business as a public carrier. In G., C. & S. F. Ry. Co. v. McGown, 65 Tex. 640, it is said: "We are further of the opinion, that a railway company cannot, by contract, lay down its public character as passenger carrier, which the law, as well as the nature of the employment in which it engages, fixes upon it, and become a mere private carrier. The constitution of this state, the general laws and the charters of such corporations, make their employment that of common or public carriers of passengers and goods."

The facts being that Luke L. Lucas was being transported by appellant over its main line railroad and on appellant's motorcar, under the provisions of the contract whereby the appellant agreed to furnish him transportation over its line, it is thought that Luke L. Lucas was a passenger at the time of his injury, in the sense that the indemnity features of the contract, in so far as they may appear to relieve appellant of its liability as a common carrier in the circumstances, are void as against public policy. The transportation being furnished Luke L. Lucas was wholly intrastate, and the views we have expressed are in accord with the more recent expression of the Commission of Appeals in Nevill v. G., C. & S. F. Ry. Co., 244 S. W. 980, reversed on rehearing, Neville v. Gulf, C. & S. F. R. Co. (Tex. Com. App.) 252 S. W. 483, for reason only that the transportation being furnished Nelvill was interstate and controlled by the act of Congress and the construction thereof as given by the Supreme Court of the United States.

■ By its eleventh provision appellant asserts: "The undisputed evidence being that the deceased Luke L. Lucas had joint control over the motor car in which he was riding, and plaintiffs having plead that it was exclusively under the control of the defendant,

and having plead negligence only in general terms, under the doctrine of res ipsa loquitur the evidence did not support the pleadings in the case, and the court therefore erred in not instructing the jury to return a verdict in favor of the defendant."

We are not of the opinion that this proposition can be sustained in the facts. Offer v. Swancoat (Tex. Civ. App.) 27 S.W.(2d) 899. L. M. Elledge testified that the motorcar was "jointly controlled" by him and Luke L. Lucas. This was a conclusion of the witness and objected to by appellees. As further developed from this witness' testimony, the facts show that the motorcar was furnished by appellant to L. M. Elledge in his work as assistant engineer of the appellant company, in which employment for appellant he surveyed and pointed out the work to be done by Lucas which necessitated their being together and they used the same means of transportation, motorcar and automobile, sometimes he drove and sometimes Lucas drove, that he (Elledge), was handling and driving the motorcar at the time of the collision. From these and other facts in the case the jury found: "That Luke L. Lucas did not have an equal right (express or implied) with the defendant's agent and employee operating the motor car upon which Lucas was riding to supervise, direct and control the operation of the motor car at the time of the collision."

■ Appellant further contends that, by the terms of its contract with him, Zay Gardner was an independent contractor laying rail on its switch and spur track, and that he was not an agent, servant, or employee of the appellant for whose negligence appellant would be liable, under the doctrine of res ipsa loquitur. Under the facts heretofore stated as to the ownership, use, and operation of this motorcar furnished Zay Gardner in transporting men and materials over appellant's railroad line, we are of the opinion that the appellant in the circumstances is liable for its negligent operation as that of its agent. G., C. & S. F. Ry. Co. v. Bryant, 30 Tex. Civ. App. 4, 66 S. W. 804.

Appellant has asserted a number of other propositions, all of which we have carefully considered, but are not of the opinion that any of them present reversible error.

The judgment of the trial court is affirmed.