## C. S. RAY v. THE STATE.

### No. 2949.   Decided April 12, 1905.

**1.—Embezzlement—Partnership.**

Partners have community property, and a partner can not be guilty of embezzlement of partnership funds, unless the partnership contract is still in an executory state and is dependent upon conditions precedent.

**2.—Same—Executory and Executed Contracts.**

Where under an indictment for embezzlement the evidence did not show that defendant came into possession of the funds of L., the party alleged to have been injured, without buying cattle therefor as the contract between the parties stipulated and then misapplied the same, the defendant could not be guilty of embezzlement although the partnership contract might be simply executory; for if he purchased cattle by drawing checks on L., as he was authorized to do, then these cattle, under the terms of the contract became partnership property and he could not embezzle them.

**3.—Same—Query.**

See facts stated in opinion which fail to connect defendant with any fraudulent scheme which might constitute swindling, but upon · which no opinion is expressed.

Appeal from the District Court of Eastland.   Tried below before Hon. J. H. Calhoun.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*E. A. Hill* and *M. E. McConnell,* for appellant.—We further urge that the testimony in the record is insufficient to sustain a conviction because of the uncontroverted testimony of appellant that the prosecuting witness H. M. Lightfoot and appellant were partners engaged in the business of buying and shipping cattle, it following that the funds used in the course of business of said partnership were partnership funds and were not the subject of embezzlement by the parties to said partnership.   Brady v. State, 21 Texas Crim. App., 659; Daney v. State, 53 S. W. Rep., 886.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of embezzlement, and his punishment fixed at confinement in the penitentiary for a term of two years, and prosecutes this appeal.

One of the main contentions of appellant is, that the funds alleged

to have been embezzled were the partnership property between himself and Lightfoot, prosecutor; and that consequently he could not be convicted of embezzling the same. We state succinctly the evidence on this subject. Lightfoot testified that he was in the cattle business; that he was buying and selling cattle; that he employed appellant to purchase cattle for him because of appellant's known skill and ability as a judge of cattle; that he (Lightfoot) was to furnish all the money necessary to buy cattle, and that appellant was to get one-half of the net profits made on such cattle as he should buy on the sale of the same; that the purchases were to be for immediate shipment, but if the cattle were not in condition to be shipped at once, that he (Lightfoot) was to feed them, get them in condition, and for all such cattle he was to pay appellant fifty cents a head; that in buying cattle, appellant was authorized to draw on the Eastland County Bank, but in all checks or drafts he was to state the number of cattle for which said draft was drawn. Lightfoot says further, that he did not remember anything was said about appellant sharing in the losses that might be sustained on the cattle; that it might have been mentioned that he supposed that would be the effect of the contract. On this point appellant testified substantially as did Lightfoot, except he stated distinctly he was to share in both the profits and losses in the purchase and sale of the cattle. As to the particular transaction on which this prosecution is based, the facts show that shortly after the contract before stated was arranged between Lightfoot and appellant, appellant went to Stephens County; and on the way met one Hale at Ranger, who accompanied him in a buggy into Stephens County to Pratt's and Bradford's to see some cattle. It is shown that after some negotiation between Hale, Pratt and Bradford, Pratt sold to Hale some eighty head of steers, three and four years old; and that Bradford sold him some seventeen head—only fifteen of which were delivered to Lightfoot. Hale gave Pratt $19 a head for the cattle purchased from him, and Bradford $18.50. It seems that in a day or two after the trade was made between Hale and said parties for the cattle, Hale and appellant returned together in a buggy, and payment was made by Hale to said parties for said cattle, by certified checks, as follows: "Eastland, Texas, 4-22-1904. The Eastland County Bank. Pay to the Bank of Strawn, or bearer, $314.50, Three Hundred, Fourteen and 50-100 Dollars. H. M. Lightfoot, by C. S. Ray. 14 3 & 4 year old steers." "Eastland, Texas, 4-22-1904. The Eastland County Bank, Pay to the Bank of Strawn, or bearer, $1558.00, Fifteen Hundred & Fifty Eight Dollars. 67 steers 3 to 5. H. M. Lightfoot, by C. S. Ray." "Eastland, Texas, 4-22-1904. Pay to myself, or bearer, $500.00, Five Hundred Dollars. 25 steers 3 & 4 years old. H. M. Lightfoot, by C. S. Ray." Each of said checks bear endorsement of the original payee, and two other banks, and are stamped paid on their face. As stated, said checks were paid by Hale to said parties, except the $500 check. Appellant at that time remained in the buggy, while

Hale got out and handed the checks to the parties. As to the $500 check it seems appellant got the money on that subsequently and handed it to Hale. It will be noticed that such checks show the number of cattle to be one hundred and six. The testimony showed that only ninety-five were actually delivered to Lightfoot. There is some testimony tending to show that at the time of the sale Pratt claimed he had three other steers he would put in, and that Bradford sold two others, but failed to deliver them at the time. Hale subsequently got the money for these cattle. We understand the theory of the State to be, from the above statement, that appellant used Hale as a mere blind; that in fact he purchased the cattle from Pratt and Bradford, and that he received the $500 from Hale, or at least half thereof. We must concede that there are some very suspicious circumstances attending this transaction, suggesting that there might have been some satisfactory arrangement between appellant and Hale. But examining the record carefully we are not able to say that there is evidence to justify this conclusion. The witnesses who testified on the point negative any such understanding or agreement. Hale testifies that he ascertained he could sell the cattle to appellant, and at about what figure he could sell them to him, and that he bought the cattle from the parties paying $18.50 and $19 as stated, when he knew he could get some $4 or $5 a head more. The testimony of appellant is to the same effect. He states that he knew nothing of Hale's terms of purchase from said parties until he agreed to give him $23.72 a head for the cattle, and that he allowed Hale to use the checks drawn by him in payment of said cattle, and paid him the $500 as his (Hale's) profit on the trade. Appellant and Hale testified that appellant received none of said $500 but that Hale retained all of it. Of course, if the theory on which it seems the State prosecuted this case to conviction was supported by evidence (conceding the case was otherwise fairly tried) then the conviction could be sustained. We understand the law to be that one partner can not embezzle the partnership funds; but those funds must be partnership funds—that is, the partnership must be consummated. As was said in Napoleon v. State, 3 Texas Crim. App., 522, "A partner can not be guilty of embezzlement of partnership funds, because said partner combines in himself at once the character of principal and agent. The partners have the community property and are interested in the partnership effects." And to the same effect see State v. Kent, 22 Minn., 41; State v. Reddick, 2 So. Dak., 194; Gary v. N. W. Masonic Aid Assn., 53 N. W., 1086; Wharton Criminal Law, volume 1, section 1015. But it seems the authorities hold, if the partnership has not been executed, if any conditions precedent are to be performed before the funds become partnership funds, then the party misappropriating or misapplying such funds, may be guilty of embezzlement, although there is an executory contract or partnership. Napoleon v. State, supra; Com v. Smith, 129 Mass., 104. In this case, if the evidence had shown that appellant (who it seems was not authorized to handle the

funds of his employer, Lightfoot, unless in the actual purchase of cattle, and then only by check enumerating the number of cattle) had by any means come into possession of the funds of Lightfoot, and without buying cattle with same had misapplied and converted such funds to his own use, he would be guilty of embezzlement, notwithstanding his executory contract of partnership with Lightfoot. But whenever appellant bought cattle by drawing checks on Lightfoot, as he was authorized to do, then these cattle, under the terms of the contract became partnership property, and he could not embezzle them. Appellant might be guilty of swindling his co-partner, by some fraudulent device in making the purchase; but it is not necessary here to express any opinion on that subject, inasmuch as the evidence fails to connect appellant in any fraudulent scheme with Hale to swindle Lightfoot.

As stated before, the court tried this case on the theory that there was some testimony tending to show appellant got the said $500 of Lightfoot's money by some fraudulent device, and then proceeded to appropriate all, or a portion of it, to his own use; but we fail to find any testimony to bear out this theory. So that the charge of the court presenting that phase of the case was without authority of law. Said charge should not have been given, and in the absence of testimony showing that appellant embezzled any money of Lightfoot or participated in such embezzlement with Hale, the conviction cannot be sustained.

It is not necessary to discuss other charges or questions as to the admissibility of evidence. For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*