## W. R. BELL V. THE STATE.

No. 18692. Delivered February 3, 1937.
Rehearing Denied March 10, 1937.

The opinion states the case.

*Thomas & McDonald,* of Big Spring, and *W. E. Martin,* of Abilene, for appellant.

*Cecil C. Collings,* District Attorney, and *Wilburn Barcus,* both of Big Spring, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Theft by bailee is the offense; penalty assessed at confinement in the penitentiary for a period of four years.

From the brief of counsel for the State we take the following facts:

"Under the evidence presented in this case it appears that appellant W. R. Bell was on December 13, 1935, in the employ of H. O. Bedford & Company; that he was in charge of the H. O. Bedford & Company office in Big Spring, Texas, at that time and for sometime thereafter. On December 13, 1935, Alvie E. Dolen, and her husband, Isaac S. Dolen, became acquainted with the appellant, W. R. Bell, at the office of H. O. Bedford & Company and bought some stock from him as agent for H. O. Bedford & Company. On December 23, 1935, Mrs. Dolen and her husband again went to the office of H. O. Bedford & Company at Big Spring and sold the stock they had bought on December 13th. This transaction was made through the appellant as agent for said company. On that same day (December 23, 1935) Mrs. Alvie E. Dolen delivered to appellant, W. R. Bell, her check in the sum of $2347.50 and received the following receipt therefor:

" 'Big Spring, Texas,
" 'December 23, 1935.

" 'Received of Mrs. Alvie E. Dolen, $2347.50 for the purpose of speculating in the New York Stock and Cotton Ex-

change and Chicago Grain Exchanges. At the option and judgment of the undersigned. All buying and selling orders to be executed by and at the order of said undersigned.

" 'Commission of 10% of profits only to be retained by the undersigned.

" '(Signed)   W. R. Bell.'

"The only agreement regarding the purpose for which appellant was to use the money in question or regarding the question of sharing any profit or loss was contained in the above receipt. The reason appellant gave Mrs. Dolen the above type of receipt instead of the regular H. O. Bedford & Company receipt which he had given her when the purchase of stock was made on December 13th was explained by Mrs. Dolen in the following manner:

" 'We went in there one afternoon to buy stock and the next morning it opened high and couldn't buy it as he couldn't reach us and he said if we would turn the money over to him he would buy for us so he wouldn't have to get in touch with us, and I had him give me this receipt so he could handle these trades himself without having to get in touch with me.'

"Mrs. Dolen was to bear the losses, if there were any losses, although appellant represented to her that there would be no losses. And it was agreed that Mrs. Dolen could have the stock sold and get her money at any time she desired.

"On December 24, 1935, the appellant deposited the check of $2347.50, together with another check of like amount signed by Isaac S. Dolen, in The First National Bank in Big Spring, Texas, to his own account. Before making this deposit W. R. Bell had $1.00 to his account in the bank. No other deposits were made by W. R. Bell after that time until the account was closed. On the same day (December 24, 1933) appellant cashed a check on this account in the sum of $1000.00. On December 28, 1935, he cashed another check for the sum of $3500.00. The teller of said bank swore that he paid to Bell in person this $3500.00 in cash. On January 2, 1936, appellant cashed another check for the sum of $195.00, leaving a balance to his account at that time of $1.00. On January 24, 1936, a check for $1.00 was cashed which closed the appellant's account.

"After talking with appellant several times about an accounting for the money which had been placed in his possession, Mrs. Alvie E. Dolen and her husband, on January 23, 1936, went to the office of H. O. Bedford & Company in Big Spring, Texas, and made a demand upon appellant for the money or the stock. This occurred in the afternoon at about

2:30 o'clock.  Appellant represented to them that the stock exchange was closed for the day and that if they would come back the next morning by 9:00 o'clock he would have it ready for them.  He also represented that there was a profit on the transaction.  On the next morning at 9:00 o'clock Mrs. Dolen and her husband were at the office of H. O. Bedford & Company as directed but appellant was gone and they were unable to see him although they stayed in town trying to find him until about 5:30 o'clock in the afternoon.  Efforts were made to locate the appellant at various times thereafter at the office of H. O. Bedford & Company at Big Spring, Texas, by inquiring at his wife's residence in Big Spring, by searching for him at McCamey, Texas, and by telephone call to the office of H. O. Bedford at El Paso, Texas, all of which were unsuccessful.  On February 17, 1936, the appellant was found and arrested in a room at the Cactus Hotel in San Angelo, Texas, registered as Russell Bell of Abilene, Texas.  He was locked in his room and refused to answer knocks at the door or telephone calls.  The room was darkened and the main light switch at the door had been changed so it could not be turned on.  The telephone was also muffled."

The indictment alleges in substance that the appellant was in possession of the money of Mrs. Dolen by virtue of a contract of bailment.  Appellant presented a motion to quash the indictment upon the ground that it failed to allege the kind or character of the bailment or contract.  In Collins v. State, 92 Texas Crim. Rep., 388, which was a conviction for embezzlement, it was held that the description of the accused in the indictment as a bailee was sufficient.  See, also, Dowdy v. State, 64 S. W., 253; Goodwyn v. State, 64 S. W., 251.  We see no reason for a more extended statement of the nature and character of the bailment in an indictment charging theft by bailee than in one alleging the offense of embezzlement.  It being sufficient under the decisions mentioned to charge that the accused received the property as bailee, it would seem to follow that in charging theft by bailee the averment that the accused was in possession of the property under a contract of bailment is also sufficient.

Appellant sought to have the court submit to the jury the issue as to whether the contract between Mrs. Dolen and himself was one of partnership.  We find nothing in the evidence raising such issue.  We are constrained to hold that the case of Lee v. State, 81 Texas Crim. Rep., 117, in which the con-

tract was held to be a bailment for the mutual benefit of the bailor and bailee, controls.

We are also of the opinion that the holding in the Lee case, supra, would support the conclusion that the conviction in the present case for theft by bailee should be sustained. Here, as in the Lee case, the contract was for the mutual benefit of the bailor and bailee. The appellant was to receive compensation for his services.

Appellant excepted to the charge of the court for its failure to submit an instruction covering the law of circumstantial evidence. In support of his contention the appellant cites the case of Miller v. State, 225 S. W., 379. In that case, in order to establish the conversion of his employer's money by Miller the State relied upon an audit which disclosed a shortage in Miller's accounts. This, together with Miller's flight, constituted the evidence relied upon by the State. In the present case, after placing the money in the bank to his own credit the appellant drew checks payable to himself and took the money into his actual possession. Under his contract with Mrs. Dolen the appellant was required to make an accounting upon demand. When called upon for an accounting he stated to Mrs. Dolen that he had invested the money in stocks and made a profit. Thus, according to his own admission, appellant had the money in his possession. He also stated to her that if she would call on the following morning he would make an accounting. When she sought him at the appointed time it was discovered that he had gone to San Angelo, where he was later arrested. He failed to return Mrs. Dolen's money to her notwithstanding his declaration to the effect that he had invested the money and made a profit. We think the evidence in the present case is direct to the point that appellant converted the money in question.

From the opinion of Judge Davidson affirming the case of Steadham v. State, 40 Texas Crim. Rep., 43, we quote the concluding paragraph as follows:

"It is also insisted that the court should have charged the law applicable to a case of circumstantial evidence. As before stated, the fraudulent conversion is not a disputed fact, under the evidence, and therefore it was not necessary to charge the law on circumstantial evidence."

Upon the record before us we are constrained to order an affirmance of the judgment of conviction, which is accordingly done.

*Affirmed.*

HAWKINS, JUDGE.—My views as to the sufficiency of the indictment have been expressed in Stein v. State, No. 18665 (this volume).

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant moves for rehearing upon the one ground that the court below erred in not responding to the exception to the charge set out below; and that we erred in not reversing for such failure. The exception is as follows:

"Defendant further objects to the court's charge for the reason that it fails to instruct the jury that if the complaining witness, Alvie E. Dolen, and the defendant W. R. Bell were operating and had been operating upon the New York markets or the Chicago Grain markets, as a joint venture, she and he contributing their time, labor and ability and funds jointly and severally, share in the profits, that they were partners, and if the jury believes or has a reasonable doubt but that they were partners in this joint venture and business enterprise and that as such the said funds in question came into his possession in the course of such business then and there and therefore being performed, that they shall not convict."

In so far as concerns the statement in said exception as to what should be in the charge, based on any supposition that Mrs. Dolen and appellant *"were operating and had been operating* upon the * * * markets, * * * she and he contributed their time, labor and ability and funds jointly or severally, * * * that they were partners,"—said statement was without facts to support it, and was contrary to the facts, as we understand them.

Up to the instant transaction appellant had acted for and as the employee of H. O. Bedford & Co., a brokerage house in Big Spring. Clearly whatever of change in the relation, if any, between Bell and Mrs. Dolen as to the present transaction, grew out of the fact of representations of appellant to the Dolens that at times when the stock market advanced he, as agent for the Bedford Company, could not sell the stock of the Dolens,—listed and held by said company,—at the advanced price, because he could not get in touch with them and obtain authority to so sell; and that if they would place money with him authorizing him, as set out in the receipt executed by him, to invest and sell without the necessity of consulting with them, it would result greatly to their advantage.

Clearly there was and could be no claim on the facts that the court's charge should have set forth that Mrs. Dolen and appellant "were operating and had been operating * * * as partners," for such were not the facts, and this being true the trial court was fully justified in the refusal to amend his charge to conform to such exception.

We further note that as to the instant transaction, namely, the receipt by appellant of the money of the Dolens to be invested by him and sold for them without consultation or personal instruction,—regardless of what claim might have been made as to partnership, had the matter proceeded to an investment of Mrs. Dolen's money and the sale of same for a profit,—the record before us is perfectly bare of any intimation even that there had been any purchase of stock or sale of same at a profit or otherwise. Nothing appears therein but the well supported proposition that in a few days, after Mrs. Dolen placed her money with appellant, he fraudulently converted and appropriated it; one thousand dollars of same the day he got it, thirty-five hundred dollars of same five days later, one hundred and ninety-five dollars five days later, and the remaining one dollar a few days thereafter. The bank official testified: "On the day this deposit was made Bell cashed a check for $1000.00 after such deposit. This was December 23rd. On December 28th Bell cashed another check for $3500.00." If we understand the testimony, appellant in person presented these checks and got the money.

This court seems to have consistently held that the making of an executory agreement out of which a partnership might have grown or come into existence but which called for or contemplated the doing of one or more things as a condition precedent to the creation of or obtaining profits or losses, and,—such condition or conditions are not complied with,—there is no such partnership as between the parties themselves. In Napoleon v. State, 3 Texas Crim. App., 522, we said:

"In this case the partnership was never consummated; the appellant did nothing in the performance of the conditional agreement. The precedent conditions were that he was to hire a car and furnish half of the capital, etc.; but, after defendant got Ransom's money, he appropriated it to his own use and abandoned the enterprise. No one of the conditions precedent were performed by defendant. Then there was no partnership, and defendant had nothing over which to exercise control and authority as a principal or owner; but he stood simply as an agent of Ransom.

"Mr. Parsons, in his work on Partnership, page 6, says: 'There must be a lawful agreement to enter into a partnership,' and 'this contract must be executed.' See, also, on page 13, ibid. On page 14 he observes: 'If the agreement of copartnership is executory and conditional, no partnership is created by it until all the conditions are fulfilled.' See, also, Wilson v. Campbell, 5 Gilm., 383, and Howell v. Brodie, 6 Bing., 44."

This is approved in Ray v. State, 48 Texas Crim. Rep., 122, wherein the court, through Judge Henderson, said:

"But it seems the authorities hold, if the partnership has not been executed, if any conditions precedent are to be performed before the funds become partnership funds, then the party misappropriating or misapplying such funds, may be guilty of embezzlement, although there is an executory contract or partnership. Napoleon v. State, supra; Com. v. Smith, 129 Mass., 104. In this case, if the evidence had shown that appellant (who it seems was not authorized to handle the funds of his employer, Lightfoot, unless in the actual purchase of cattle, and then only by check enumerating the number of cattle) had by any means come into possession of the funds of Lightfoot, and without buying cattle with same had misapplied and converted such funds to his own use, he would be guilty of embezzlement, notwithstanding his executory contract of partnership with Lightfoot."

Again in O'Marrow v. State, 66 Texas Crim. Rep., 416, we said:

"But do the facts as testified to by appellant raise the issue that he was a partner at the time he received the money? His contention is that there was a partnership agreement, and that he was to place in the stock certain property, go to Dallas and buy goods, and return and take charge of the store. The property he was to place in the stock was never shipped; neither did. he ever return. According to his theory and under his evidence, he never did those things he contracted and agreed to do. In our opinion, if the trade was in terms as contended by appellant, it was but a conditional agreement; and the partnership would not come into existence until he had shipped the property he was to place in the business, and had returned and complied with the other conditions of the agreement. At the time he recived the $150 from Mr. Morris to purchase the goods in Dallas, he knew there were cetain things for him to do, certain goods he then claimed to be in his possession to be furnished, and, if he failed to do so, the agreement, if made, would be no more binding upon Mr. Morris than upon him;

consequently it would not be an executed contract until he had complied with the conditions that he says he was to comply with. Consequently, even under his statement, he never became a partner with Mr. Morris, and was not his partner at the time the money was delivered to him to buy goods in Dallas. (Napoleon v. State, 3 Texas Crim. App., 524.)"

The same principle appears upheld in Aldrich v. State, 29 Texas Crim. App., 394, in which the court said:

"A general rule, deduced from an able review of the authorities by a writer in the 13th volume of the Central Law Journal, p. 464, is: 'It would seem that if the money comes into the servant's hands, any act still remains to be done before he has the right to take his share, wrongful conversion to his own use is embezzlement; but if, on the receipt of the money, he is entitled to his share of commissions on the claim collected, it is not embezzlement.' This rule is adopted in 6 American and English Encyclopedia of Law, p. 465."

Also this principle is upheld in the cases of Lee v. State, 81 Texas Crim. Rep., 117; Allen v. State, 94 Texas Crim. Rep., 646; Summers v. State, 122 Texas Crim. Rep., 179, and others.

Applying this to the case at bar, we observe that appellant had no sort of interest in the money of Mrs. Dolen which was turned over to him for the specific purpose of investment in stocks, same to be thereafter sold, and if for profit, then and not until then, he, appellant, to get ten per cent of such profit. He did not buy any stocks with said money. The condition precedent to the partnership, if any ever could have been created, never arose, or was complied with. Appellant applied all the money that Mrs. Dolen turned over to him to his own use and benefit and bought no stocks. We see no reason for discussing the civil cases cited in appellant's motion.

The motion for rehearing is overruled.

*Overruled.*