### INTERNATIONAL–GREAT NORTHERN R. CO. et al. v. LUCAS et al.

### No. 1863.

Court of Civil Appeals of Texas. Eastland.
Dec. 16, 1938.

Rehearing Denied Jan. 20, 1939.

Sewell, Taylor, Morris & Garwood, of Houston, and B. F. Davis, of Jacksonville, for appellants.

Seale & Thompson, of Nacogdoches, Norman & Norman, of Rusk, and King & Cox, of Houston, for appellees.

FUNDERBURK, Justice.

The judgment of the District Court from which this appeal is prosecuted, awarded Mrs. Mary M. Lucas, the surviving wife, and Mary Beth, Tom Jack and

Ray Burk Lucas, surviving children of Luke L. Lucas, deceased, the recovery of $26,000, as damages (apportioned) for the death of said Luke L. Lucas, who was killed in a motor car collision between two motor cars on the International-Great Northern Railroad. The judgment was against International-Great Northern Railroad Company, with provision for execution against it; and also against Guy A. Thompson, Trustee (in bankruptcy) of said company, with provision for certification of the judgment as to him to the bankruptcy court, being the United States District Court for the Eastern District of Missouri, Eastern Division, wherein Guy A. Thompson had been appointed Trustee and had control of the properties of said Railroad.

Luke L. Lucas was a member of the firm of Lucas & Lucas, composed of himself and G. E. Lucas, who were contractors under employment of said Railroad Company, by the terms of which, according to written contract, they were to furnish all the necessary materials, superintendance, labor and equipment, and execute, construct and finish complete in every respect the necessary facilities in connection with oil field development on the Henderson and Overton branches of the International-Great Northern Railroad Company. The appellants defended on the grounds, among others, that Luke L. Lucas was killed while engaged in interstate commerce; and that, by provision of the contract employing said firm of contractors, the latter had assumed and agreed to indemnify the Railroad Company against all claims for damages for negligence of said Railroad Company, in transporting the agents and employees of said contractors, which, it was alleged, in effect, included the claim in suit. The parties to said contract were said Railroad Company, referred to therein as "The Company" and "Lucas & Lucas, a co-partnership * * * herein called The Contractor." Provisions of said contract deemed material to the questions to be considered are:

"5. The Contractor agrees to comply with the requirements of the State in which the work is done with respect to safety of employees and to assume all liability for or on account of injuries to, or deaths, of the *agents and employees of the Contractor* * * * which may occur during the transportation of said persons * * * over the lines of the Company and further agrees to assume all liability for injuries to or death of the agents and employees of the Contractor * * * which may occur during the prosecution of the work covered by this agreement whether said injuries to or death of said persons * * * shall have been occasioned by reason of anything whatsoever, whether by reason of the negligence of the agents and employees of the Company, or by reason of the operation of the trains, cars and engines of the Company or otherwise; and the Contractor hereby agrees to indemnify and save harmless the Company from all claims, expenses and damages or recoveries for or on account of anything, the liability for which is by this paragraph hereby expressly assumed by the Contractor * * *." (Italics ours.)

"8. * * * And furthermore, the Company as part of and in further consideration for the services to be performed as herein provided, will furnish transportation over its own lines for the necessary persons * * * required for * * * the performance of the work covered by this letter as follows; which transportation the Contractor agrees shall be used only by the persons * * * for which the same is furnished * * *."

At the time of the collision Luke L. Lucas was riding on a two-man motor car operated by Leroy M. Elledge, Supervising Engineer for said Railroad Company, of the work of said Contractor; the other motor car involved in the collision being operated by Zay Gardner, another contractor doing other contract work for said Railroad Company.

The contracting firm of Lucas & Lucas and the contractor Zay Gardner alike had the right to free transportation over the railroad, and Zay Gardner was personally operating one of the motor cars on the occasion and consequent death of Luke L. Lucas.

We believe it to be unnecessary, because of our conclusion upon one point, to determine either of the questions (1) whether deceased, at the time of the accident, was engaged in interstate commerce, or (2) whether he was (technically) a passenger on said railroad. Conceding, provisionally, and without deciding, that deceased came to his death while engaged in interstate commerce, and at a time when he did not sustain the technical relation

of passenger to said railroad company, the plaintiffs, we think, upon the issues of negligence, proximate cause and damages, found in their favor, in no respect challenged upon this appeal, were entitled to the judgment, unless the provision of the said contract for indemnity of the railroad company from liability for negligence resulting in the injuries or death of "agents, and employees of the Contractor" was applicable to deceased. That such provision of the contract is not applicable was decided by the Court of Civil Appeals (70 S.W.2d 226) and by the Supreme Court (128 Tex. 480, 99 S.W.2d 297, 100 S.W.2d 97) upon a former appeal of this case. Said the opinion of the Supreme Court [page 299]: "It is not the law that a man can be the agent of himself. In attending to the business of the firm, Luke Lucas was acting for himself and as the agent of his copartner. The firm, as such, did not have independent legal existence, with legal capacity to have an agent. In law and in fact, the term 'agents and employees of the contractor,' as used in the foregoing provisions, means the agents and employees of Luke Lucas and G. E. Lucas, as copartners, and does not include either partner."

We apprehend that no authority can be found to the contrary. It is in line with the proposition that under Workmen's Compensation Laws a member of a partnership is not protected as an employee since one cannot be both employer and employee. Berger v. Fidelity Union Cas. Co., Tex.Civ.App., 293 S.W. 235; Millers' Ind. Underwriters v. Patten, Tex.Civ.App., 238 S.W. 240; Gebers v. Murfreesboro Laundry Co., 159 Tenn. 51, 15 S.W.2d 737. In our criminal laws the Court of Criminal Appeals has several times had occasion to hold, in effect, that a partner was not to be regarded as an agent of the firm. Ray v. State, 48 Tex.Cr.R. 122, 86 S.W. 761; O'Marrow v. State, 66 Tex.Cr.R. 416, 147 S.W. 252. The decision of the Supreme Court upon this point in the former appeal is cited to the text of C.J.S. as follows: "While the partnership relation includes the relation of principal and agent, it differs from a pure agency in that a partner when acting for the partnership binds himself and his co-partners, while an agent acts for and binds his principal alone." 2 C.J.S., Agency, p. 1031, § 2, h. See, also, 2 C.J. 425, sec. 12. Besides all else, as pointed out by Chief Justice John-

son of the Texarkana Court of Civil Appeals, on the former appeal, the contract itself shows a distinction between the "Contractor" and the "agents and employees of the Contractor." 70 S.W.2d 228. In the preceding paragraph 4 that "The Contractor * * * further expressly covenants and agrees that in case of accident caused by act or omission of the *Contractor,* or of any agent, servant or employee thereof, * * * which shall result in damage or injury to the Contractor, * * * the Contractor will acquittance and full discharge" obtain from such damaged or injured person, etc. This relates to other injuries of person or property than such as received in "transportation." The limitation in paragraph 5 of the indemnity therein provided as against injuries and deaths of the "agents and employees of the Contractor" simply does not admit of a meaning to include the Contractor.

Did the undisputed evidence show conculsively as a matter of law that the deceased was guilty of contributory negligence? In brief, it is the contention of appellants that the evidence established conclusively that deceased failed to maintain a look out up the track in the direction they were going, which failure was negligence and a proximate cause of his death. As supporting this contention the decisions in the following cases are cited: Texas Mexican Ry. Co. v. Hoy, Tex.Com. App., 24 S.W.2d 18; Texas & P. Ry. Co. v. Fuller, 5 Tex.Civ.App. 660, 24 S.W. 1090; Wichita Valley Ry. Co. v. Fite, Tex.Civ.App., 78 S.W.2d 714; Edmiston v. Texas & N. O. Ry. Co., Tex.Civ.App., 111 S.W.2d 848; Cisco & N. E. Ry. Co. v. McCharen, Tex.Civ.App., 118 S.W.2d 844.

We doubt if the evidence should be held to establish conclusively that Lucas was not keeping a look out. The most that the evidence showed was that at some indefinite time before the place of the collision was reached he was not doing so. Elledge, who was operating the motor car, testified that the collision occurred upon a curve; that he first discovered the other motor car when it was 125 feet ahead of him and attempted to stop but was unsuccessful; that Lucas had his back toward the front end of the motor car and his face toward the rear. The witness was then asked "Do you know whether or not that was his position just prior to

the collision" and he answered "A short time prior to it, yes." As to what he meant "By a short time prior to the collision" he said "Just about the location of the Humble Oil & Refining Company track, I recall Mr. Lucas was looking at the grading work to see if it was completed." That this location was about five telegraph posts south of the point of collision, said telegraph posts being about 176 feet apart. The witness, when asked whether he could recall if Lucas changed his position after passing the point mentioned up to the place of collision, said "I could not say, unless it was just prior to the collision."

This witness further testified that the track at the location of the accident was on a stiff curve to the right and was situated on the side of a hill, leaving a small cut or embankment on the side of the curve which was grown up in weeds and that this condition, together with the grade conditions of the track, kept him from seeing the oncoming motor car before he did.

■ As said before, the fact, we think, is not certainly shown that Lucas was not looking and in any event if Elledge saw the other motor car as soon as it could be seen that would exclude the failure of Lucas to keep a lookout as being the proximate cause of the injuries since, according to the description of the small motor car in which they were traveling, there can be no presumption that Lucas could have seen it appreciably sooner than Elledge could.

But conceding that it was conclusively shown that deceased had his back to the front of the motor car, or, in other words, was not keeping any character of lookout, in our opinion the evidence did not conclusively show that he was guilty of contributory negligence.

■ Only two of the cases cited by appellants need be particularly considered. In all the other cases the party held to have been guilty of contributory negligence as a matter of law was the person operating or responsible for the operation of a vehicle involved in the accident. The authority of said other decisions, therefore, on the particular question at issue depends upon the validity of the proposition that an occupant of a vehicle has the duty equal to that of the driver to keep a lookout in order to discover and guard against dangerous conditions. In our opinion, both reason and authority concur in condemning such a proposition—thus broadly stated —as unsound. If such be the law, one could not take passage in any of the numerous buses now plying the highways without being guilty of contributory negligence, unless he could get a position in the bus to enable him to keep a constant lookout along the road. The same would be equally true of railway passenger travel which from the obvious impossibility involved in such requirement would, in effect, make it contributory negligence, to take passage on a railway train. The proposition implies that the occupant of an automobile not charged primarily with its operation, whatever the degree of inexperience in, or knowledge of, the operation of automobiles could not rely upon the known or believed efficiency of the driver.

■ It is believed that the conditions under which a plaintiff injured while an occupant of a vehicle, not being operated by him, will, as a matter of law, bar recovery on the ground of contributory negligence, are well and accurately stated in the Restatement of the Law of Torts, vol. 2, p. 1281, sec. 495, as follows:

"A plaintiff is barred from recovery if the negligence of a third person is a legally contributing cause of his harm, and the plaintiff

"(a) has the ability to control the conduct of the third person and

"(b) knows or has reason to know that he has such ability, and

"(c) knows or should know

"(i) that it is necessary to exercise his control, and

"(ii) that he has an opportunity to do so, and

"(d) fails to utilize such opportunity with reasonable care."

■ In the explanatory comment it is further said:

"Save in exceptional situations, a guest or passenger in a vehicle is not required to keep a constant lookout or to see to it that he shall be in condition to do so. Thus, a plaintiff riding in the front seat may take his attention off the road to look at the scenery or may turn around to speak to a friend in the back or he may go to sleep or read a book without being guilty of contributory negligence if the

driver commits some negligent act which the plaintiff, had he been on the alert, might have had the opportunity to prevent. However, if the plaintiff knows that at a particular point there will be a peculiar danger, *which he has no reason to believe that the driver if unaided will perceive,* the plaintiff may be guilty of negligence if he does not keep himself in a position to call the danger to the attention of the driver. Save under such exceptional circumstances, a plaintiff is entitled to trust the *vigilance and skill of his driver unless he knows from past experience or from the manner in which the car is being driven on the particular trip, that the driver is likely to be inattentive or careless.*" (Italics ours.)

We do not believe that the Supreme Court of Texas in approving the opinion in Texas Mexican Ry. Co. v. Hoy, supra, or by its act in naming some other ground in granting the writ of error in Edmiston v. T. & N. O. Ry. Co., supra, intended to sanction a declaration of the law at variance with the above.

■ In the instant case there was no evidence that Lucas, if it be conceded that he knew, or had reason to know, that he had the ability to control the conduct of Elledge, the driver of the motor car, *knew or should have known that it was necessary to exercise such control,* at least within any time before the accident, he may have had an opportunity to do so. There is no evidence that Elledge was not keeping a proper lookout or that he was driving at a dangerous rate of speed, under circumstances known, or which should have been known to Lucas. If Elledge was not keeping a proper lookout, or was driving at a dangerous rate of speed, there was no evidence to show with certainty that Lucas was aware of that fact. The evidence suggests no reason why Lucas should have apprehended that Elledge was not doing all that both of them could have done in the way of care to prevent injury. The evidence does not show, at least not conclusively so, that Elledge himself was guilty of negligence. Certainly then it cannot be said that the evidence shows conclusively that Lucas was guilty of negligence.

■ The record in this case, insofar as its contents are called to our attention as incident to questions presented for decision, shows no attack made upon the sufficiency of the pleadings to state a cause of action against Guy A. Thompson in his capacity as trustee, or any attack upon the jurisdiction of the court to entertain the action. It seems to us that Guy A. Thompson, as trustee, must be regarded as the legal equivalent of a receiver of the property of the company after the commencement of an action against such company. If so, he was at least a proper party to the suit. McNulta v. Lochridge, 141 U.S. 327, 12 S.Ct. 11, 35 L.Ed. 796; Schaff v. Nash, Tex.Civ.App., 193 S.W. 469; Dallas Con. Traction Ry. Co. v. Hurley, 10 Tex.Civ.App. 246, 31 S.W. 73; International & G. N. Ry. Co. v. Ormond, 57 Tex.Civ.App. 79, 121 S.W. 899; Howe v. Harding, 76 Tex. 17, 13 S.W. 41, 18 Am. St.Rep. 17. The jurisdiction of the court in which the trusteeship is pending would seem to be sufficiently recognized and protected by the provision of the judgment for its certification to said court.

■ We are also of the opinion that there was no error, or if so, that it was harmless, in the provision of the judgment against International-Great Northern Ry. Co. for execution. Its reasonable interpretation is that it can only be effective as to property, if any, not in the custody of the trustee, or property of the company after release of such custody. It should not be held to imply, contrary to the law, that it is a provision for an interference with the legal custody of property in the receivership.

■ The provision for interest on the judgment added nothing, we think, to the provisions of law. R.S.1925, Art. 5072; Texas & St. L. Ry. Co. v. Melear, 2 Willson Civ.Cas.Ct.App. § 457. If, therefore, the interest be not collectible as against the provisions of the law, neither would it be so far as we can see, as against the provision of the judgment, and therefore such provision in any event would be harmless.

It being our conclusion that the judgment of the court below should be affirmed, it is accordingly so ordered.