**D. H. ARNOLD, Appellant,**

v.

**P. CAPRIELIAN et al., Appellees.**

No. 345.

Court of Civil Appeals of Texas.

Tyler.

Jan. 30, 1969.

Rehearing Denied Feb. 27, 1969.

MOORE, Justice.

This is a suit for dissolution of an alleged partnership, for an accounting and for distribution of the partnership real estate and other assets, brought by appellant, D. H. Arnold, against appellees, P. Caprielian and his son, J. E. Caprielian. The suit was filed on August 23, 1962. Appellees, P. Caprielian and J. E. Caprielian, in addition to a general denial, denied under oath the existence of the alleged partnership and specially alleged that the partnership did not come into being in 1949 because the plaintiff failed to make his contribution to the capital, and the portion thereof which plaintiff did put up had been returned to the plaintiff and accepted by him, and, in the alternative, that if the partnership existed at any time, that the parties had rescinded and abandoned the same and it had been terminated and disposed of many years ago.

Trial was had before the court sitting without a jury. At the conclusion of the evidence, the trial court rendered judgment in favor of appellees, P. Caprielian and J. E. Caprielian, and entered a take-nothing judgment against appellant, D. H. Arnold, from which he perfected this appeal.

At the request of D. H. Arnold, the trial court filed findings of fact and conclusions of law. The trial court's findings of fact deemed to be material to this appeal are as follows:

(1) That appellee, P. Caprielian, executed the following instrument (offered in evidence as Plaintiff's Exhibit 1):

"Crockett, Texas     August 10/19 49

"This agreement is made between P. Caprielian and D. H. Arnold both of Crockett, Texas, for the purpose of buying and operating the two cotton gins located in Crockett, Texas, Houston County now operated under the names of Berry Gin Co. and LeMay Gin Co. under the menagement of Frank Shank and Alton LeMay respectively

Sallas, Griffith & Meriwether, J. B. Sallas, Chester V. Hines, Crockett, for appellant.

W. D. Julian, Jr., Crockett, Andrews, Kurth, Campbell & Jones, Homer Mabry, Houston, for appellees.

"It is expressly agreed that above P. Caprielian, and D. H. Arnold will have equal half interests in the venture. The total purchase price being $50,000.00. P. Caprielian agreed to pay his half share of purchase price, namely $25,000.00 and D. H. Arnold remaining half $25,000.00.

"P. Caprielian to have full charge of supervision of the operation of the above mentioned cotton Gins.

"This agreement is made in duplicate and signed by the two agreeing parties.

"/s/ P. Caprielian
_____"

(2) That subsequent to the execution of the foregoing instrument, P. Caprielian executed the following instrument on September 15, 1949, (offered in evidence as Plaintiff's Exhibit 2):

"This is to ceritfy that D. H. Arnold of this city as a silent partner is the co-owner of the two cotton gin plants recently purchased by me, namely Berry Ginn Co. and LeMay Gin Co. both cituated in Crockett, Texas.

"Of the purchase price of $50,000.00, $25,000.00 being furnished by D. H. Arnold entitles him for full one half ownership of the properties and machinery covered by a deed and recorded in Houston County Clerk's office, and also one half share of profits derived from gin operations under the management of myself, having full authority to dispense the affairs of the business.

"/s/ P. Caprielian"

(3) Shortly after executing the instrument of August 10, 1949, P. Caprielian proceeded with negotiations to acquire the Berry and LeMay Gin properties and acquired both properties upon the same date, paying a total consideration of $50,000.00 therefor. All of this money was paid out of moneys put up by P. Caprielian, who took title in his name only. P. Caprielian immediately thereafter notified the plaintiff, D.

H. Arnold, or those acting in his behalf, of such acquisition, and on September 7, 1949, the plaintiff caused to be deposited in P. Caprielian's bank account the sum of $12,500.00, which was only one-half of the amount which plaintiff had agreed to contribute to the acquisition of these properties. Thereafter, P. Caprielian contacted the plaintiff or his representative in an effort to obtain the other $12,500.00, but was unable to do so; that plaintiff's representative advised him that plaintiff was unable to put up the additional $12,500.00, and that this occurred somewhere around the time of the delivery of the instrument dated September 15, 1949, as Mr. Caprielian had carried said instrument to the plaintiff's representative for the purpose of obtaining the additional $12,500.00, which he never obtained, and he continued to operate the two gins as a sole proprietorship. During the fall of 1949, or early part of 1950, P. Caprielian returned the $12,500.00 which had been put up by the plaintiff, and the plaintiff accepted the same.

(4) Plaintiff did not contribute or tender within a reasonable time the amount that was required as his contribution to the capital of the proposed 1949 partnership with P. Caprielian, and P. Caprielian did not waive the requirements thereof.

(5) The contribution to the capital was a condition to the forming of a partnership and plaintiff not having made his full contribution, said partnership was never formed but was abandoned by plaintiff, which was acquiesced in by P. Caprielian.

(6) P. Caprielian acquiesced in plaintiff's abandonment of the venture and in 1949 or early 1950 repaid to plaintiff the amount which plaintiff had put up, and plaintiff accepted the same as a return of capital and not as a profit.

(7) The purchase price for the Berry and LeMay gins was all furnished by P. Caprielian, and the plaintiff not having paid the full amount which he was required to pay but having accepted a return of the amount which he did put up as a return

of the principal, the same disposed of any equity which he might be entitled to in the Berry and LeMay gin properties, or any interest therein did not pass to plaintiff.

(8) P. Caprielian operated the Berry and LeMay gins throughout as a sole proprietorship or as ownership between himself and J. E. Caprielian, and reported income therefrom as his income or as the income of P. Caprielian and J. E. Caprielian and paid the taxes on the property constituting the same each and every year prior to delinquency, and plaintiff knew that there were times when there were necessarily profits from the operation thereof; he did not inquire about the same, never asked to see the books, and no partnership income tax return in connection with the operations of P. Caprielian and the plaintiff was ever filed or reported, and the dealings between the parties were always on the basis of debtor and creditor, and if any partnership was ever formed, the same was immediately abandoned and plaintiff's capital returned to him.

(9) There was no amendment to the 1949 written agreements whereby plaintiff was permitted to put up less than the $25,000.00.

(10) P. Caprielian did not waive the requirement of the plaintiff to put up the entire $25,000.00, but insisted thereon, and when the same was not put up as agreed, he returned the amount which the plaintiff did put up, and plaintiff accepted the same as a return of the money which he had put up.

(11) In late 1949 or early 1950, there was a withdrawal by the plaintiff of the amount which he had advanced toward his contribution to the capital and this was by mutual agreement and if there ever was a partnership, the same was terminated.

The conclusions of law deemed to be material are as follows:

(1) The agreement of August 10, 1949, contemplated the acquisition of real estate and the formation of a partnership, with each party to contribute equally to the capital, and that the principal contribution by the plaintiff was to be the contribution to capital, which was necessary for the acquisition of the property and the operation thereof.

(2) The contribution to the capital by the plaintiff was a condition precedent.

(3) Plaintiff having failed to make his full payment as contemplated, he did not acquire an interest in the properties.

(4) Plaintiff failing to make his contribution to the partnership, it was never formed.

(5) Plaintiff having accepted a return of the portion of the capital which he did put up, and having accepted it as a return of capital, which the parties had a right to do, conclusively shows that there was no acquisition of title to the properties by the plaintiff or the creation of the contemplated partnership.

(6) P. Caprielian did not waive the requirement that plaintiff make his contribution to the capital.

Appellant attacks the court's findings and judgment by two points of error. By the first point, he asserts that the evidence conclusively shows the formation of a partnership and that the same has never been dissolved. By the second point of error, he asserts that the partnership agreement did not violate the anti-trust laws. In connection with the second point of error, we fail to find anything in the findings of fact or conclusions of law indicating that the judgment was based upon a finding of a violation of the anti-trust laws. As we view it, the judgment is based solely upon the conclusion that no partnership was ever consummated. The question of a violation of the anti-trust laws was never reached. Therefore, the only question before us is whether there is any evidence of probative force showing that a partnership contract was consummated. Appellees sought to show that no partnership was ever formed because appellant failed and refused to con-

tribute the full amount of $25,000.00, but contributed only the sum of $12,500.00. Appellant sought to prove that he had contributed the full amount of $25,000.00.

While it is without dispute that appellant deposited the sum of $12,500.00 in appellees' bank account, the question of whether he contributed the remaining $12,500.00 was a sharply contested issue. According to the testimony offered by the appellant, the remaining $12,500.00 was paid by check drawn on the Citizens State Bank of Corrigan. While appellant admitted that he did not have an account in that bank, he testified that he had made arrangements with the bank to pay the check when presented. This was confirmed by the President of that bank. Appellant testified that at the time he delivered the check to Caprielian, he told him that he could cash it when he needed the money. He further testified that Caprielian advised him that he did not need the money and subsequently returned the check to him. The check was offered in evidence; however, it appears without dispute that the same was never endorsed by Caprielian or paid by the bank. While Caprielian admits that he received the $12,500.00 deposited to his account, he denied that appellant delivered him a check for the additional sum of $12,500.00. He testified that shortly after the purchase of the gins, the machinery commenced breaking down and he was desperately in need of the money as he had expended all of his funds on the purchase of the gin. He testified that on or about the 15th of September, 1949, he prepared the above instrument designated as plaintiff's Exhibit No. 2 and took the same to appellant's office requesting the payment of the additional $12,500.-00; that in the course of the conversation, he handed the instrument to appellant; that appellant requested him to wait a few days which he agreed to do; and that he left the instrument in the possession of appellant because he trusted him. A few days later he again called on appellant for the additional $12,500.00, at which time appellant said "I can't pay it", to which he replied "If that's the way you feel

about it, all right with me." He testified that he left the office and thereafter did not consider that a partnership existed but only that he was indebted to appellant for the sum of $12,500.00.

■ The record shows that at the time Caprielian purchased the two gins, appellant and his father, L. H. Arnold, were also operating two other cotton gins in the City of Crockett. Prior to 1949 Caprielian and the Arnolds had been close friends and had been engaged in numerous other business transactions. After Caprielian purchased the gins, the parties commenced upon a course of business dealings with one another, selling each other cotton, cotton seed and gin supplies on credit. The price charged for ginning cotton became stabilized and their business relations were amicable. Appellant admitted that Caprielian re-paid him $12,500.00 in late 1949 or early 1950. Subsequent to this time, the record further shows that even though appellant knew that there were times when there was profit from the operation of the gins, he did not inquire about the same nor did he ask to see the books or request a copy of the partnership income tax returns. It is undisputed that no partnership income tax returns were ever filed by the parties between 1949 and 1962. It is also undisputed that appellant did not file any income tax return reflecting either profit or loss by reason of such operation during such time. Appellant was unable to produce any books or records which he kept in connection with the alleged partnership. L. H. Arnold, his father, who was in charge of bookkeeping, testified that there were no permanent records kept on this operation and that all that was kept was usually kept in his "shirt pocket." It was not until some thirteen years after the alleged creation of the partnership that appellant first asserted his rights as a partner by filing suit for an accounting and division of the partnership assets.

No useful purpose would be served in further reviewing the testimony. As we view the record, there is ample evidence of

probative force to support each of the findings made by the trial court.

The existence of a partnership is primarily a question of fact. 44 Tex.Jur. 2d, Sec. 130.

It is generally stated that a partnership is not created by a mere agreement to form a partnership or by the advancement by one of the parties of his agreed share of the capital. Persons who have entered into a contract to become partners at some future time or on the happening of some future contingency do not become partners until or unless the agreed time has arrived or the contingency has happened. As long as the agreement for a partnership remains inchoate or unperformed, the partnership is not consummated. In order to transform an executory partnership agreement into an executed one, it is necessary that the parties do the things that they agreed to do. 68 C.J.S. Partnership § 11, page 418; Underberg v. Yates (Tex.Civ.App.), 194 S.W.2d 277; Chancellor v. Brachman (Tex.Civ. App.), 41 S.W.2d 1015; Bell v. State, 132 Tex.Cr.R. 81, 104 S.W.2d 511; Cearley v. Cearley (Tex.Civ.App.), 331 S.W.2d 510.

As we interpret the contract, it was clearly executory in that the parties contemplated that the partnership would be consummated provided each party advanced his share of the capital.

The rule in this state is that where one of the parties to the executory contract fails or refuses to contribute his proportion of the agreed assets, although the others did, a partnership is not consummated and the other parties have the right to treat the contract as abandoned. First National Bank of Amarillo v. Rush, (Tex.Com.App.), 210 S.W. 521; 68 C.J.S. Partnership § 79, page 520; 44 Tex.Jur.2d Partnership, Sec. 36, page 361.

The question of whether or not appellant contributed the sum of $12,500.00 in addition to the $12,500.00 deposited to the appellees' bank account, so as to create a partnership, was a controverted issue of fact. The trial court expressly found that the appellant failed to contribute all of the $25,000.00 as contemplated by the executory contract. This being a non-jury case, the trial court was the judge of the credibility of the witnesses and the weight to be given their testimony, and the findings of the court are entitled to the same weight and conclusiveness on appeal as the verdict of the jury. Where there is evidence of probative force to support the findings and judgment, such findings are controlling on the reviewing court and will not be disturbed, even though the evidence is conflicting and the appellate court might have reached a different conclusion. 4 Tex.Jur. 2d, Sec. 839, pages 398–401; Robinson v. Faulkner (Tex.Civ.App.), 422 S.W.2d 209. As stated before, there is evidence to support the judgment and consequently we are bound thereby.

The judgment of the trial court is affirmed.