**John M. HAYS, dba Southwest Irrigation Company, Appellant,**

v.

**H. J. HOGAN, INC., et al., Appellees.**

**No. 11859.**

Court of Civil Appeals of Texas, Austin.

Nov. 24, 1971.

Shaw, Davis & Benson, William R. Davis, San Antonio, for appellant.

Davis & Stacy, A. W. Davis, Bryan, for appellees.

O'QUINN, Justice.

Appellant brought this suit for damages arising from termination of a subcontract to construct a water pumping station in Hearne, Texas.

The cause was tried before the court without a jury, and after trial the court entered judgment finding that H. J. Hogan, Inc., one of the appellees, had wrongfully terminated its contract with appellant and awarding appellant recovery in the sum of $15,078.67, plus attorney's fees of $2,200. United States Fidelity and Guaranty Company, a defendant below, is one of the appellees.

Appellant complains that the trial court erred in arriving at the amount of damages and prays that his damages be increased to $27,308.66.

This we decline to do and will affirm the judgment of the trial court.

Appellant went to trial on pleadings alleging breach of contract and seeking damages on the contract in the amount of $27,908.66. In the alternative, appellant pleaded *quantum meruit*, alleging materials and services furnished were reasonably worth $30,458.66 and giving credit for payment of $3,150.00 on the contract. Under this pleading, appellant asked for damages in the sum of $27,308.66, the amount sought in this appeal.

The original contract price was $31,-900.00, to which $424.64 was added under a duly authorized change order, bringing the total contract to $32,324.64.

The only evidence appellant offered as to the value of labor and materials furnished by him was his own testimony. Appellant testified that the reasonable value of labor and materials was $30,458.66.

Appellee Hogan presented several witnesses who testified as to the value of labor and materials, as to workmanship on the project and its status at the time Hogan terminated the subcontract, and also as to the cost involved in completing the job after appellant left it.

The resident inspector on the project testified that the job lacked "considerable being any where near finished" when he was directed to take over the job due to failure of appellant to perform the work in a timely and satisfactory manner. The witness also testified that every flange on the yard piping was found to be leaking, and that several flanges were installed backwards. These defects and discovery of loose bolts in the flanges required that the entire yard piping be dug up for inspection. It was necessary, the witness stated, to uncover finally all yard piping for repairs and replacement, and thereafter to realign, relay, reblock, and tie in all such piping. Some of the piping inside the pumphouse had to be reworked, the witness said, and one pump had not been set, while

another that had been set was found leaking and required realignment. Additional work required, the witness testified, included completion of electrical installations, all glazing under the contract, pouring a concrete floor, installation of doors, and construction of a fence, as well as painting and clean up. The inspector also testified that he did not agree with appellant as to the percentage of completion on the project, and that in general there "was still quite a bit of the work to be done, majority of it in the pump house."

The project engineer testified that in general the job was in unsatisfactory condition, that progress was slow, and that as the engineer on the job he required corrections made to include the digging up of the yard piping. The engineer also said that after some deliberation he joined with the city of Hearne in a letter to Appellee Hogan, the prime contractor, instructing that company to terminate the contract with appellant.

The president of H. J. Hogan, Inc., testified that he was required by the project engineer and the City to terminate the contract with appellant in October, 1969, and that after terminating the contract his company completed the job in about thirty days. The witness also testified that to perform the work at Hearne he withdrew men and equipment from two other projects, at Huntsville and at College Station, which were shut down to permit completion of the job at Hearne. It was the witness' testimony that ninety percent of the Hearne job had to be redone.

In order to complete the work at Hearne, Appellee Hogan's president testified, he was forced to expend reasonably the sum of $23,675.47, which included $5,110.56 paid for a well pump and booster pump appellant had not supplied as required under the contract. It was also shown that Appellee Hogan had paid appellant $3,150.00 on the contract before it was terminated.

No findings of fact or conclusions of law were filed by the trial court and none was requested. In Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup.1968) the Supreme Court restated the rule we must follow in deciding whether the judgment of the trial court will be affirmed: "When findings of fact and conclusions of law are not requested or filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence." Citing Bishop v. Bishop, 359 S.W.2d 869 (Tex.Sup.1962).

We find sharp conflict between the testimony of appellant and that of appellees' witnesses as to the percentage of completion and the quality of workmanship on the project at the time the contract was terminated. The testimony on these topics bears materially upon the value of labor and materials furnished by appellant under terms of the contract and the cost to appellees of finishing the project. Appellant testified that the reasonable value of labor and materials he furnished was $30,458.66 and that this total included $3,000.00 for a well pump and $1,800.00 for a new booster pump. Yet other testimony seems to show conclusively that appellant had not furnished these pumps, but that the pumps were bought for the job by Appellee Hogan later at a cost of $5,110.56.

The trial court was the judge of the credibility of the witnesses and the weight to be given their testimony. The findings of the court, expressed and implied in the judgment, are entitled to the same weight and conclusiveness on appeal as the verdict of a jury. Arnold v. Caprielian, 437 S.W.2d 620 (Tex.Civ.App. Tyler 1969, writ ref. n.r.e.).

Without findings of fact or conclusions of law, we are unable to determine under which theory of recovery the trial court arrived at damages in the sum of $15,078.67. Appellant pleaded alternatively breach of contract, and for damages, and on *quantum meruit* for full value of work done. We conclude that on either theory

there is sufficient evidence of probative force to support the judgment. The proper measure of damages under either theory was stated by this Court in Kleiner v. Eubank, 358 S.W.2d 902, 905 (Tex.Civ.App. Austin 1962, writ ref. n.r.e.).

Appellant urges that the trial court did not apply the proper formula in arriving at the measure of damages and asks us to modify that judgment and "increase the damages to $27,308.66 against defendants." The trial court could have arrived at damages of $15,078.67 by any one of several mathematical processes, any one of which would be in accord with the proper measure of damages under either of the two theories appellant pleaded. Since there is evidence of probative force to support the findings and judgment, we are bound by the judgment and its findings and will not disturb the judgment, even though the evidence is conflicting and even though we might have arrived at a different result as to damages. Arnold v. Caprielian, supra.

The judgment of the trial court is in all things affirmed.

Affirmed.